John Charles Ulrickson v. Kelcie A. Hibbs, Individually, and Loe, Warren, Rosenfield, Kaitcer & Hibbs, P.C.

COURT OF APPEALS
(comment: 1)
SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-161-CV

JOHN CHARLES ULRICKSON APPELLANT

V.

KELCIE A. HIBBS, INDIVIDUALLY, APPELLEES

AND LOE, WARREN, ROSENFIELD, 

KAITCER & HIBBS, P.C. 

------------

FROM THE 141
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This case involves allegations of legal malpractice, breach of fiduciary duty, and violations of the DTPA.  Appellant John Charles Ulrickson sued attorney Kelcie A. Hibbs (“Hibbs”) individually and the law firm for which she works, Loe, Warren, Rosenfield, Kaitcer & Hibbs, P.C. (collectively “Appellees”) over their representation of him in guardianship and probate proceedings.  We affirm the trial court’s judgment in part and reverse and remand it in part.

I.  Background Facts

Appellant’s mother, Varina Ulrickson, owned the title to property known as 1800 Forest Park Boulevard, Fort Worth, Texas (“the Forest Park Property”), and allegedly owned the title to property known as 1215 E. Peach Street, Fort Worth, Texas (“the Peach Street Property”).  According to Appellant, on or about February 23, 1992, Varina executed a warranty deed on the Forest Park Property in favor of Appellant, reserving a life estate for herself.  Appellant contends that Varina delivered the deed to him sometime between late August 1993 and early 1994.  In late 1994, Varina suffered a series of debilitating strokes, and Appellant, via attorney Randall Lyle, filed an application for guardianship of Varina’s person and estate.  The inventory listing filed with the application included the Forest Park Property but omitted the Peach Street Property.  Temporary letters of guardianship were issued to Appellant on November 8, 1994.  Permanent letters of guardianship were issued on February 15, 1995.

On March 29, 1995, Appellees assumed representation of Appellant in the guardianship proceeding.  They prepared a document entitled “INVENTORY, APPRAISEMENT AND LIST OF CLAIMS AS OF DATE OF TEMPORARY GUARDIAN’S QUALIFICATION - NOVEMBER 8, 1994” in accordance with the controlling section of the Texas Probate Code in effect at the time.
(footnote: 2)  This document included the Forest Park Property in Varina’s estate but not the Peach Street Property.

On April 11, 1995, Appellees filed an inventory and accounting for the guardianship estate that was effective as of February 15, 1995,
(footnote: 3) the day the permanent letters of guardianship were issued.  Varina died November 24, 1995.  Appellees filed the final inventory and accounting for the guardianship estate on February 12, 1996.  Each document filed by Appellees included the Forest Park Property in Varina’s estate but omitted the Peach Street Property.

Appellees also represented Appellant in his capacity as the executor of Varina’s estate.  Appellees filed an inventory of the estate, including a list of claims, which was effective as of November 24, 1995, the date of Varina’s death.

Joe Ulrickson, Appellant’s brother and a beneficiary under Varina’s will,  filed a petition for an accounting and distribution of the assets in Varina’s estate.  On March 10, 1998, he served Appellant with the petition and a request for production of documents.  Appellees made the requested documents available for inspection, filed an answer on Appellant’s behalf on March 24, 1998, and filed a motion to withdraw as counsel for Appellant on April 29, 1998.  Ross Griffith took over as Appellant’s counsel and filed an accounting on Appellant’s behalf.  Appellant ultimately settled the dispute with his brother on March 13, 1999.  Appellant brought this suit on February 12, 2001.  The trial court granted summary judgment in favor of Appellees on all of Appellant’s causes of action, from which Appellant timely appeals.

II.  Legal Analysis

In his amended petition, Appellant sued Appellees for negligence, breach of fiduciary duty, gross negligence, breach of implied warranty, filing a fraudulent lien, and violations of the DTPA.  Appellees filed a motion for summary judgment, contending that all of the claims were barred by various affirmative defenses, or, instead, were not cognizable causes of action.  They also alleged lack of evidence on some of the specific negligence and gross negligence claims.  The trial court granted summary judgment on all causes of action.  Appellant now concedes that summary judgment was correct as to the breach of implied warranty claim and the filing of a fraudulent lien, leaving the DTPA claims, breach of fiduciary duty claims, and negligence and gross negligence claims at issue.

A.  Standard of Review

In his first issue, Appellant argues that Appellees’ motion is a traditional motion for summary judgment.  Appellees concede that it is.  “The standards for reviewing a motion for summary judgment are well established.”
(footnote: 4)  “The movant has the burden of showing that there is no genuine material fact issue and that it is entitled to judgment as a matter of law.”
(footnote: 5)  A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.
(footnote: 6)  
Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 7)
 A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.
(footnote: 8)  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.
(footnote: 9)  
When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.
(footnote: 10)  

A motion for summary judgment must state the specific grounds upon which the motion is to be granted.
(footnote: 11)  “The motion for summary judgment must stand or fall on the grounds it specifically and expressly sets forth.”
(footnote: 12)  “[I]f the grounds upon which the motion for summary judgment is based are presented in a single document that contains both the motion and brief, the requirements of Rule 166a have been met.”
(footnote: 13)

B.  DTPA Claims

In his fourth issue, Appellant contends that Appellees are not entitled to summary judgment as a matter of law.  We hold that the trial court correctly granted summary judgment on Appellant’s DTPA claims.  To the extent that Appellant’s DTPA claims were not barred by the two-year statute of limitations, they are not cognizable causes of action.  Appellees stated both of these grounds in their motion for summary judgment.
(footnote: 14)
 Section 17.565 of the Texas Business and Commerce Code provides that all deceptive trade practice claims must be brought 

within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.
(footnote: 15)

A DTPA claim for legal malpractice is not tolled by the underlying suit.
(footnote: 16)
 Appellant stated in his affidavit attached to his response to Appellees’ motion for summary judgment that Lyle, his lawyer before Appellees, had communicated the importance of the deed to Appellant.  Appellees’ representation of Appellant occurred during the period from March 29, 1995 until May 7, 1998.  Furthermore, Appellant was served with a petition for accounting and distribution on March 10, 1998 by his brother.  Appellant states that he could not have reasonably discovered the deceptive practice committed against him earlier than June 16, 1999.  Appellant did not file this suit until February 12, 2001.  Without deciding when each claim accrued, we hold that to the extent that Appellant’s DTPA claims accrued before September 1, 1995, they are barred by the two-year statute of limitations.
(footnote: 17) 

To the extent that Appellant’s DTPA claims accrued on or after September 1, 1995, they are not cognizable causes of action.  Section 17.49(c) of the DTPA provides:

Nothing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill.  This exemption does not apply to:

(1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;

(2) a failure to disclose information in violation of Section 17.46(b)(24);

(3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion;

(4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion; or

(5) a violation of Section 17.46(b)(26).
(footnote: 18)

Section 17.49(c) applies to causes of action accruing on or after September 1, 1995.
(footnote: 19)  The only DTPA claims alleged by Appellant—violations of 17.46(a), (b)(2), (3), (5), (6), and (7)—are not excluded from the exemption.   Consequently, all of Appellant’s DTPA claims accruing on or after September 1, 1995—and he alleges that all of them accrued after that date—are not cognizable causes of action under the DTPA.  The trial court correctly entered summary judgment as to the DTPA claims because Appellees were entitled to judgment as a matter of law.  We overrule Appellant’s fourth issue as to these claims and do not reach his remaining issues regarding them.
(footnote: 20)
C. 
 
Legal Malpractice and Breach of Fiduciary Duty

1. Nature of Claims

In his live petition, Appellant grouped some of his claims in “Count One - Negligence and Breach of Fiduciary Duty.”  The claims presented under Count One contend that Appellees:

failed to file required annual accountings for the guardianship and probate estates; 

failed to properly research the legal effect of the warranty deed on the Forest Park Property and failed to properly advise him thereon; 

failed to include property belonging to the estate in documents filed with the court;

failed to exclude property belonging to Appellant from the documents filed with the court; 

failed to investigate the facts and research the law in the administration of the guardianship, the estate, and the underlying litigation, including a failure to timely communicate with Appellant; and 

failed to forward Appellant’s complete file to his new attorney. 

This court has held in a similar case:

We agree with Appellants that an attorney has a fiduciary duty to his client.  We disagree, however, with Appellants' characterization of their claims as a breach of fiduciary duty.  The focus of breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client, while the focus of a legal malpractice claim is whether an attorney adequately represented a client. 

The essence of a breach of fiduciary duty involves the “integrity and fidelity” of an attorney.  A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations.

Unlike a claim for breach of fiduciary duty, legal malpractice is based on negligence, because such claims arise from an attorney's alleged failure to exercise ordinary care.  A cause of action for legal malpractice arises from an attorney giving a client bad legal advice or otherwise improperly representing the client.  For example, an attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests.

Generally, courts do not allow a case arising out of an attorney's alleged bad legal advice or improper representation to be split out into separate claims for negligence, breach of contract, or fraud, because the “real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise.” Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice.
(footnote: 21)

Based on our review of the law and the record, we hold that the claims raised in Count I are all legal malpractice claims, not breach of fiduciary duty claims.  We shall therefore address the claims under Count I along with the gross negligence claims presented under Count II as legal malpractice claims.

2.  The Accountings

In his second issue, Appellant argues that Appellees should not have been granted summary judgment based on a failure of proof on the elements of breach of duty or causation because Appellees did not allege such failures of proof as grounds for summary judgment in their motion.  Appellees specifically alleged in their motion that Appellant’s claims for negligence and gross negligence for failure to file accountings were mischaracterizations of the law and that an annual accounting was not required for either the guardianship or the probate estate.

In his fourth issue, Appellant argues that Appellees are not entitled to judgment as a matter of law.  In support of their motion for summary judgment, Appellees attached an expert’s affidavit from Donald J. Pierson, II.  An expert’s opinion testimony can defeat a claim as a matter of law if the testimony is based on reason and if the expert is qualified to offer his opinion based upon his “knowledge, skill, experience, training, or education.”
(footnote: 22)
 Pierson described in detail his education, experience, and training, including the facts that he is a licensed certified public accountant, he has been licensed to practice law in Texas since May 15, 1978, and he has actively practiced law in Texas since obtaining his license.  Pierson also stated that he is board certified in estate planning, probate law, and tax law by the Texas Board of Legal Specialization and that for the last twenty-one years he has been engaged in handling probate and guardianship issues.

Pierson stated that he is familiar with the standards of care that would be exercised by a reasonably prudent attorney board certified in estate planning and probate law acting under the same or similar circumstances, and that he is familiar with the documents required to be filed in guardianship and probate estates.  Pierson listed all of the documents that he reviewed in connection with this case, including but not limited to papers filed with the court, correspondence, and bills.

Based on his review, Pierson stated that Appellees had no duty to file an annual accounting for the guardianship estate because the guardianship was in existence for less than one year when the ward died.
(footnote: 23)  He also stated that Appellees had no duty to file an annual accounting for the probate estate because an independent executor is not required to file an annual accounting with the court unless so ordered pursuant to section 149B of the Texas Probate Code.
(footnote: 24)  After reviewing all relevant documents, Pierson opined that Appellees committed no negligence or gross negligence in the handling of the guardianship estate and probate estate and that Appellant suffered no damage during that representation.

As a general rule, expert testimony is required to prove the standard of care in a legal malpractice case.
(footnote: 25)  Appellant did not respond to Appellees’ motion for summary judgment with an expert’s affidavit refuting Pierson’s statements.  We hold that Appellees’ motion for summary judgment negated at least one element of Appellant’s claims regarding the failure to file accountings as a matter of law.
(footnote: 26)  The trial court therefore correctly granted summary judgment as to those claims.  We overrule Appellant’s second and fourth issues as to those claims and do not reach his remaining issues on those claims.
(footnote: 27) 

3. Remaining Legal Malpractice Claims

Appellant’s argument in his second issue that Appellees failed to allege no-evidence grounds on the remaining malpractice claims is valid, however. Even though the summary judgment evidence may have addressed no-evidence issues, Appellees did not allege any failures of Appellant’s proof on the remaining legal malpractice claims in their motion.  Because such grounds are not presented in the motion, the trial court could not have properly granted summary judgment on such grounds, and we cannot affirm summary judgment on those grounds.
(footnote: 28)  To the extent that the trial court granted summary judgment on the remaining legal malpractice claims on such grounds, we sustain Appellant’s second issue.  For these remaining claims, we address the affirmative defenses presented in the motion.

a.
  
Claims Concerning the Forest Park Property 

Based on the affirmative defense of judicial estoppel, the trial court correctly granted summary judgment as to the claims regarding the quality of Appellees’ advice, their failure to give advice, and the inclusion or exclusion of the Forest Park Property in documents filed with the court.  “Judicial estoppel is a common law principle that applies when a party tries to contradict his or her own sworn statement given in prior litigation.”
(footnote: 29)  It is a legal principle intended to protect the integrity of the judicial system by preventing parties from “playing fast and loose” with the courts to suit their own purposes.
(footnote: 30)  The rule is intended to prevent litigants from self-contradiction in order to obtain an unfair advantage.
(footnote: 31)
 Appellant claims in this case that the Forest Park Property is his.  He took the opposite stand in the underlying guardianship and probate proceedings before, during, and after Appellees’ representation.  Appellant stated in his sworn affidavit attached to his response to Appellees’ motion for summary judgment that his mother gave him the deed to the Forest Park Property in “late August, 1993 or early 1994.”  After Varina suffered her strokes, Appellant filed an amended application for temporary and permanent letters of guardianship for Varina on November 3, 1994.  The application stated that Varina resided at and owned the Forest Park Property.  Randall Lyle signed the application as the attorney for Appellant.  Appellant verified the application by swearing under oath that he had read the application and that to the best of his information, knowledge, and belief, the information was correct.  He further swore that no material fact had been omitted.  On December 30, 1994, Appellant filed an application to continue the guardianship of Varina.  Once again, the application stated that Varina owned the Forest Park Property.  Lyle signed the application as Appellant’s attorney, and Appellant verified under oath that “every statement contained therein is within his personal knowledge and is true and correct.”   On March 1, 1995, Appellant filed a final inventory, appraisement, and list of claims of the temporary guardian.  Lyle signed the document as the attorney for Appellant, it included the Forest Park Property, and Appellant again swore that “every statement contained therein is within his personal knowledge and is true and correct.”

Each of the above three documents was drafted and signed by Appellant’s prior attorney, Randal Lyle.  Similarly, in an accounting for the period of November 24, 1995 through July 28, 1998, Appellant’s attorney after Appellees’ representation ended included the Forest Park Property.  Appellant swore under oath that “the account contains a true, correct and complete statement of the matters to which the account relates.”

Appellee admitted in his affidavit attached to his response that he knew that the deed had been delivered to him before the above applications were made.  Despite his possession of the deed, he subsequently swore in several verified documents filed with the court that the property belonged to his mother.  Now, in the case before us, he claims that the property was his.  Judicial estoppel prevents him from abandoning the position that the Forest Park Property belonged to Varina and instead arguing in this subsequent lawsuit that it belonged to him.  Because Appellees were entitled to summary judgment as a matter of law on this ground on the claims involving the Forest Park Property, we overrule Appellant’s fourth issue on those claims and do not reach his other issues concerning them.
(footnote: 32)
b.
 
Remaining Open Legal Malpractice Claims

The remaining open claims include:

(1) failure to investigate and research the law regarding the administration of the guardianship and probate estates and the underlying suit brought by Appellant’s brother, including the failure to timely communicate with Appellant; 

(2) failure to properly disclose the Peach Tree Property in the Inventory, Appraisement, and List of Claims;

(3) failure to timely forward complete legal files to Appellant’s new counsel; 

(4) failure to file inventories and make final distributions of the remaining estate; and

(5) billing Appellant for work that remained uncompleted or unfiled.

Our review of Appellees’ motion for summary judgment shows that the only summary judgment grounds raised for these claims are statute of limitations and release.

Appellant did not allege any conduct that would constitute a breach of fiduciary duty.
(footnote: 33)  Thus, the two-year statute of limitations for legal malpractice applies.
(footnote: 34)  Generally, the statute of limitations begins to run “when facts have come into existence that authorize a claimant to seek a judicial remedy.”
(footnote: 35)  The discovery rule applies to legal malpractice claims.
(footnote: 36)  That is, the limitations clock does not commence until “the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action.”
(footnote: 37)  Additionally, “[w]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded.”
(footnote: 38)
 The underlying suit in this case was settled on March 13, 1999.  Appellant filed this suit against Appellees on February 12, 2001.  Appellant timely filed this suit within the two-year statute of limitations for legal malpractice claims.  To the extent the trial court granted Appellees summary judgment on these claims based on the limitations ground, it did so in error.

Appellees also argued in their motion for summary judgment that Appellant was barred from pursuing any claim against them because he had  signed a release of all claims against them.  The release states that Appellant “hereby release[s] . . . all persons acting for or on behalf of the Guardianship Estate from any and all claims, expressed or implied, of whatsoever kind or nature, which [he] may have had against them.”

The law firm defendant bears the summary judgment burden to establish that a release from its client was fair and reasonable.
(footnote: 39)  “Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized.”
(footnote: 40)  “Because the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts.”
(footnote: 41)  As the client’s fiduciaries, Appellees were required to inform Appellant “of all material facts relating to the release.”
(footnote: 42)
 Appellees offered no summary judgment evidence indicating that they informed Appellant as to all the material facts relating to the release, nor did they present any summary judgment evidence that the release was fair and reasonable.  Appellees failed to carry their summary judgment burden.  To the extent the trial court granted Appellees summary judgment on this theory of release, it did so in error.  We sustain Appellant’s fourth issue as to these remaining legal malpractice claims.

III.  Conclusion

We affirm the trial court’s judgment that Appellant take nothing on his negligence and gross negligence
 claims that allege Appellees failed to file annual accountings, failed 
to properly advise Appellant about the Forest Park Property, and failed to exclude the Forest Park Property from the guardianship and probate estate documents filed with the court.  
We also affirm the trial court’s judgment that Appellant take nothing on his claims under the DTPA.

Because of our holding regarding Appellees' failure to allege Appellant's lack of evidence as a summary judgment ground for claims other than the accounting claims, as well as our holdings rejecting Appellees' stated summary judgment grounds of release and limitations, we reverse the trial court’s judgment in part and remand the case for resolution of the following claims:

(1) failure to investigate and research the law regarding the administration of the guardianship and probate estates and the underlying suit brought by Appellant’s brother, including the failure to timely communicate with Appellant; 

(2) failure to properly disclose the Peach Tree Property in the Inventory, Appraisement, and List of Claims;

(3) failure to timely forward complete legal files to Appellant’s new counsel; 

(4) failure to file inventories and make final distributions of the remaining estate; and

(5) billing Appellant for work that remained uncompleted or unfiled.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

CAYCE, C.J. filed a concurring opinion.

DELIVERED:  November 6, 2003

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-161-CV

JOHN CHARLES ULRICKSON APPELLANT

V.

KELCIE A. HIBBS, INDIVIDUALLY, APPELLEES

AND LOE, WARREN, ROSENFIELD, 

KAITCER & HIBBS, P.C.

------------

FROM THE 141
ST
 DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING OPINION

------------

The uncontroverted summary judgment proof in this case conclusively establishes that appellees’ alleged conduct did not deviate from the applicable standard of care.  Yet, the only summary judgment grounds raised in answer to the five “remaining open legal malpractice claims” identified on pages 18-19 of the majority opinion are statute of limitations, release and that the claims were “not cognizable causes of action.”

A summary judgment cannot be affirmed on any ground not specifically presented in the motion for summary judgment, even if the summary judgment proof conclusively establishes the movant’s right to judgment on a particular theory of liability or defense.  
See
 
Tex. R. Civ. P. 
166a; 
State Farm Fire & Cas. Co. v. S.S.
, 858 S.W.2d 374, 380-81 (Tex. 1993).  While justice, fairness, and judicial economy might be served in this appeal by an affirmance of the summary judgment, we do not have the authority to affirm the summary judgment 
sua sponte
 on a theory not presented in appellees’ motion for summary judgment.

JOHN CAYCE

CHIEF JUSTICE

DELIVERED:  November 6, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 47.4.

2:
See
 Act of May 30, 1993, 73
rd
 Leg. R.S., ch. 957, § 1, 1993 Tex. Gen. Laws 4081, 4160 (amended 2003) (current version at 
Tex. Prob. Code. Ann
. § 729(a) (Vernon Supp. 2004) (requiring guardian to file with clerk of the court not later than 90 days after qualification of the guardian a detailed inventory of the ward’s estate)).

3:
See id.

4:
Ryland Group, Inc. v. Hood
, 924 S.W.2d 120, 121 (Tex. 1996).

5:
Id.

6:
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).

7:
Id.

8:
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.
, 988 S.W.2d 746, 748 (Tex. 2002).

9:
Ryland Group, Inc.,
 924 S.W.2d at 121.

10:
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995); 
Harwell v. State Farm Mut. Auto. Ins. Co.,
 896 S.W.2d 170, 173 (Tex. 1995).

11:
Tex. R. Civ. P.
 166a(c); 
Westbrook Constr. Co., Inc. v. Fid. Nat’l Bank of Dallas
, 813 S.W.2d 752, 754 (Tex. App.—Fort Worth 1991, writ denied).

12:
Westbrook Constr. Co.,
 813 S.W.2d at 754
.

13:
Hearne v. AmWest Sav. Ass’n
, 951 S.W.2d 950, 954 (Tex. App.—Fort Worth 1997, no pet.).

14:
See
 
Tex. R. Civ. P.
 166a(c); 
Hearne
, 951 S.W.2d at 954; 
Westbrook Const. Co.,
 813 S.W.2d at 754.

15:
Tex. Bus. & Com. Code
 
Ann. 
§ 17.565 (Vernon 2002).

16:
Underkofler v. Vanasek
, 53 S.W.3d 343, 346 (Tex. 2001).

17:
See
 
Tex. Bus. & Com. Code Ann. 
§§ 17.49(c), 17.565; Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(b), 1995 Tex. Gen. Laws 2988, 3004.

18:
See
 
Tex. Bus. & Com. Code Ann. 
§ 17.49(c). 

19:
See
 Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(b), 1995 Tex. Gen. Laws 3004.  

20:
See 
Tex. R. App. P.
 47.1.

21:
Kimleco Petroleum, Inc. v. Morrison & Shelton
, 91 S.W.3d 921, 923-24  (Tex. App.—Fort Worth 2002, pet. denied) (citations omitted).

22:
Burrow v. Arce
, 997 S.W.2d 229, 236 (Tex. 1999).

23:
See 
Tex. Prob. Code Ann. 
§ 741(a).

24:
See id.
 § 149B.

25:
James v. Mazuca & Assocs. v. Schumann
, 82 S.W.3d 90, 97 (Tex. App.—San Antonio 2002, pet. denied); 
Ersek v. Davis & Davis, P.C.
, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied). 

26:
See Elliott-Williams Co.
, 9 S.W.3d at 803.

27:
See 
Tex. R. App. P.
 47.1.

28:
See Westbrook Constr. Co.
, 813 S.W.2d at 754
.

29:
Stewart v. Hardie
, 978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied).

30:
Id.

31:
Id.

32:
See
 
Tex. R. App. P.
 47.1.

33:
See Kimleco Petroleum
, 91 S.W.3d at 924.

34:
See id.
;
 
see also
 Tex. Civ. Prac. & Rem. Code Ann. 
§ 16.003(a).

35:
Apex Towing Co. v. Tolin
, 41 S.W.3d 118, 120 (Tex. 2001).

36:
Id.
 at 122.

37:
Id.
 at 121.

38:
Id.
 at 119.

39:
Keck, Mahin & Cate v. Nat’l Union Fire Ins. Co., Pa.
, 20 S.W.3d 692, 699 (Tex. 2000).

40:
Id.

41:
Id.

42:
Id.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority Opinion by Justice Dauphinot; Concurring Opinion by Chief Justice Cayce