# NO. 12-17-00130-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JC PROJECT MANAGEMENT SERVICES, INC. AND JACK CARPENTER, APPELLANTS* | *§* | *APPEAL FROM THE 258TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *TRAVIS KITCHENS, APPELLEE* | *§* | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

JC Project Management Services, Inc. and Jack Carpenter appeal from an adverse summary judgment rendered in their legal malpractice suit against Travis Kitchens. The sole issue on appeal concerns whether a tolling provision applies to prevent a limitations bar. We reverse and remand.

## BACKGROUND

Jack Carpenter is president of JC Project Management Services, Inc. which owns a lot in the Cedar Point Subdivision in Point Blank, Texas. JC Project hired Kitchens to represent its interests in a conflict with Charles Von Schmidt, Waterfront Development, LLC, and the Cedar Point Property Owners Association. JC Project filed suit in August 2011 complaining of deed restriction violations and trespass damages arising from Von Schmidt's activities on the lot adjacent to JC Project's property. The suit also requested a declaratory judgment that Cedar Point's 2006 amended deed restrictions are invalid.

Three months later, Von Schmidt sent a letter to property owners in Cedar Point. Without naming JC Project, Von Schmidt alerted readers that an "investor has filed suit to try and break our deed restrictions." He then explained that a majority of the property owners had signed the 2006 deed restrictions, "and while that should be more than enough for any judge, we need more to insure our victory." Touting the purported improvements brought on by implementation of the

2006 deed restrictions, he urged all property owners to sign an enclosed "acceptance form" and return it to the property owners association.

In early December, Carpenter discussed the letter with Kitchens because he felt Von Schmidt was "meddling" and attempting to influence the outcome of the lawsuit. Carpenter drafted a letter to Cedar Point property owners addressing the Von Schmidt letter. Kitchens edited it and drafted a form for use by property owners to revoke prior consent to the amended restrictions. The Carpenter letter, on JC Project letterhead, dated December 8, 2011, and signed by Carpenter, along with the revocation form, was sent to Cedar Point property owners. In the letter, Carpenter opined that the Property Owners Association Board of Directors had refused to protect the members. He explained that, in his opinion, Von Schmidt, through his companies, had received the benefit of hundreds of thousands of dollars of association assets without compensating the association. He went on to identify certain events in support of his opinion. He specifically stated that he believes the evidence establishes that Von Schmidt and his companies committed fraud.

In response to Carpenter's letter, on January 6, 2012, Von Schmidt sued JC Project and Carpenter for libel and slander. Kitchens represented JC Project and Carpenter in the libel suit. The parties settled at mediation, and the trial court signed an agreed order of dismissal of the libel suit on September 19, 2014.

On March 15, 2015, JC Project and Carpenter sued Kitchens for legal malpractice alleging that he provided erroneous legal opinions and advice in reviewing, editing, and printing the letter at the heart of the libel lawsuit. Kitchens moved for summary judgment asserting that the cause of action is barred by limitations. He argued that the malpractice cause of action accrued no later than February 4, 2012, the date JC Project and Carpenter hired Kitchens to defend them in the libel suit, obligating them to pay attorney's fees and litigation expenses. Kitchens further argued that limitations is not tolled, and the lawsuit was filed outside the two year limitations period. The trial court granted the motion and ordered that JC Project and Carpenter take nothing. This appeal ensued.

## LIMITATIONS

In their sole issue, JC Project and Carpenter contend that the trial court erred in granting summary judgment in favor of Kitchens because their malpractice claim was tolled until the libel lawsuit was resolved. Asserting that the work that is the basis of the malpractice claim was "in

support of the prosecution of JC Project's claim in the underlying litigation," they further argue that the work was not transactional.

## Standard of Review

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of the cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Simulis, L.L.C. v. Gen. Elec. Capital Corp.*, 439 S.W.3d 571, 575 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and disregard contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

## Applicable Law

A suit for professional negligence must be brought no later than two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West 2017); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). When a cause of action accrues is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of action accrues when facts have come into existence that authorize a claimant to seek a judicial remedy. *Apex Towing Co.*, 41 S.W.3d at 120. A person suffers injury from faulty professional advice when the advice is taken. *Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 291 (Tex. App.–Dallas 2005, no pet.). In a legal malpractice case, the attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue. *Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex. App.–Austin 1985, no writ). Defendants seeking summary judgment on the basis of limitations must prove when the cause of action accrued. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). When the nonmovant asserts that a tolling provision applies, the burden is on the movant to negate the applicability of the tolling statute. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996).

3

"Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." ***Hughes v. Mahaney & Higgins***, 821 S.W.2d 154, 157 (Tex. 1991). Therefore, when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded. ***Id***. Limitations are tolled because the viability of the malpractice cause of action depends on the outcome of the cause of action out of which the malpractice arose. ***Id***.

Without reexamining policy reasons, courts are to apply the ***Hughes*** tolling rule to the category of legal malpractice cases encompassed within its definition. ***Apex Towing Co.***, 41 S.W.3d at 122. Therefore, courts must determine whether the malpractice is alleged to have occurred "in the prosecution or defense of a claim that results in litigation." ***Id***. at 121–22. Because transactional work is not encompassed in that definition, the ***Hughes*** tolling rule does not apply to legal malpractice claims arising from transactional work performed by an attorney. ***Murphy***, 168 S.W.3d at 292; ***Vacek Group, Inc. v. Clark***, 95 S.W.3d 439, 444–47 (Tex. App.— Houston [1st Dist.] 2002, no pet.).

## Analysis

In his motion for summary judgment, Kitchens asserted that the malpractice cause of action accrued no later than February 4, 2012, the date JC Projects and Carpenter hired Kitchens to defend them in the libel lawsuit and obligated themselves to pay attorney's fees and expenses. Kitchens argued that the malpractice suit was filed more than two years after that date and the ***Hughes*** tolling provision does not apply. Focusing on the malpractice petition, Kitchens argued that JC Project and Carpenter did not allege that he was negligent in defending the underlying lawsuit. Instead, he asserted, they complain that he was negligent in giving Carpenter bad advice in connection with the drafting and publication of the letter that led to the libel lawsuit. Therefore, based on the wording of the malpractice petition, he asserted that this lawsuit involves only transactional work, not legal malpractice committed during "the prosecution or defense of a claim that results in litigation."

In their response, JC Project and Carpenter contended that the malpractice claim is for litigation related conduct, not transactional work, therefore the ***Hughes*** tolling rule applies. Alternatively, they argued that a material issue of fact exists as to whether the tolling rule applies.

4

Carpenter and JC Project aver that Kitchens negligently reviewed and approved the response letter which was authored by Carpenter. They argued that the letter was intended to support their legal position in the Cedar Point lawsuit but was not intended to make any defamatory assertions about Von Schmidt. Further, they explained that, within one month of delivering the response letter to the Cedar Point property owners, Von Schmidt sued JC Project and Carpenter for libel because of the contents of that letter.

In support of their response to the motion, JC Project and Carpenter presented Carpenter's declaration in which he points out that the Cedar Point lawsuit was ongoing when Von Schmidt circulated his letter to Cedar Point property owners. Carpenter felt this was an attempt to undermine his efforts to invalidate the amended deed restrictions, the subject of his suit.

Carpenter also explained that after Kitchens reviewed the Von Schmidt letter, he advised Carpenter that a rebuttal letter needed to be sent to Cedar Point property owners. At Kitchen's direction, Carpenter drafted the response letter, Kitchens then reviewed it and printed the letter on JC Project letterhead. The letter was then circulated to Cedar Point property owners. Carpenter described his letter as being in connection with the Cedar Point lawsuit for the purpose of assisting JC Project in obtaining a declaration that the 2006 amended restrictions were invalid. Carpenter further opined that if the cause of action accrued on February 4, 2012, they would have been placed in the position of claiming, in the libel lawsuit, that the letter was not libelous while claiming, in the malpractice lawsuit, that Kitchens was negligent for allowing a libelous letter to be published.

Also included in support of the response is Kitchens's billing invoice which itemizes his charges in the Cedar Point Lawsuit. It indicates that, on December 8, 2011, Kitchens charged for "Receipt and Review of letter from JC Project Management Services, Inc. to Cedar Point Property Owners."

Kitchens asserts that the cause of action accrued on February 4, 2012, the day he was hired to represent JC Project and Carpenter in the libel lawsuit, incurring legal expenses and discovering a risk to their economic interests. The general rule is that a cause of action sounding in tort accrues when the tort is committed. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967). A legal injury must be sustained before a cause of action arises. *Id*. JC Project and Carpenter suffered injury from Kitchens' faulty professional advice when they took the advice on December 8, 2011. *See Murphy*, 168 S.W.3d at 291. They discovered the risk of harm at least by January 6,

2012, the date Von Schmidt sued them for libel. However, if the tolling provision applies, there is no need to determine when the cause of action accrued. *Hughes*, 821 S.W.2d at 156.

In *Hughes*, the court determined that limitations are tolled on a malpractice claim where malpractice is committed during the prosecution or defense of a claim and a lawsuit is filed that encompasses the prosecution or defense of that claim. *Id*. at 157. Reference to the exhaustion of all appeals on the underlying claim meant exhaustion of all appeals in the litigation of the claim being prosecuted or defended when the alleged malpractice occurred. *See Renda v. Erikson*, 07-17-00019-CV, 2018 WL 1833523, at *3 (Tex. App.−Amarillo April 17, 2018, no pet. h.) (op.). Thus, in *Hughes*, limitations was tolled until appeals of the original underlying claim were exhausted. *See Hughes*, 821 S.W.2d at 157.

Two weeks after the *Hughes* opinion issued, the supreme court issued its opinion in *Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159 (Tex. 1991) (per curiam). *Gulf Coast* extended the tolling rule announced in *Hughes* to the circumstances of that case which involved malpractice by an attorney hired to conduct a non-judicial foreclosure sale of real property. The malpractice led to a lawsuit by the debtors against Gulf Coast for wrongful foreclosure. After the wrongful foreclosure suit was resolved, Gulf Coast then sued its attorney for malpractice. The supreme court held that the *Hughes* tolling rule applied to toll the statute of limitations on the malpractice claim until the wrongful foreclosure action is finally resolved. *Id*. at 160. In *Gulf Coast*, the limitations period was tolled until the ultimate resolution of the third-party's suit against the client. *Id*.

In extending the rule, the court focused on the malpractice occurring when the client endeavored to pursue its "claim" and whether that malpractice resulted in the client being sued by a third party. *Renda*, 2018 WL 1833523, at *5. The tolling equation developed in *Gulf Coast* consisted of (1) a claim; (2) the prosecution of or defense against that claim by the client; (3) the client's attorney committing malpractice in the prosecution of or defense of that claim; and (4) the malpractice causing or resulting in a third-party suing the client. *Id*. If these elements exist, the limitations period within which the client had to sue his attorney is tolled until the ultimate resolution of the third-party's suit against the client**. *Id*.

Here, the summary judgment evidence shows the prosecution of a claim by JC Project and Carpenter, the Cedar Point lawsuit, to seek, in part, invalidation of amended deed restrictions secured by Von Schmidt's company covering the property at issue in that suit. Von Schmidt was a party to the Cedar Point lawsuit. Carpenter asserts Von Schmidt's letter to Cedar Point property

6

owners was designed and intended to strengthen Von Schmidt's position in the Cedar Point lawsuit and undermine Carpenter's position. Wanting also to strengthen his position or at the very least, neutralize Von Schmidt's efforts, Carpenter consulted with Kitchens as to an appropriate response. That consultation resulted in the drafting of the response letter by Carpenter which was reviewed and edited by Kitchens before circulation to the Cedar Point property owners.

The evidence also shows that, as a result of the circulation of their response letter, Carpenter, in his individual capacity, and JC Project were sued by a third party, Von Schmidt, due to work done for them by Kitchens while the Cedar Point lawsuit was pending. As was the case in *Gulf Coast*, we have a situation before us in which alleged legal malpractice occurred in the prosecution of a claim. In *Gulf Coast*, the claim was a money debt owed, secured by real property. Here, the claim is an attempt to invalidate amended deed restrictions which, if invalidated, would subject Von Schmidt's company to monetary damages to JC Project. In *Gulf Coast*, the malpractice occurred as part of pursuing a non-judicial foreclosure to collect the debt owed. Here, the alleged malpractice occurred as part of the decision to prepare, review, and circulate the response letter. In *Gulf Coast*, the failure to conduct the non-judicial foreclosure properly resulted in a wrongful foreclosure suit by the property owner against Gulf Coast. Here, the response letter led to a defamation lawsuit by Von Schmidt against Carpenter.

Following the logic of *Gulf Coast*, the tolling rule applies as long as the evidence shows the malpractice occurred in the prosecution of the Cedar Point lawsuit. *See Apex Towing Co.*, 41 S.W.3d at 122. Kitchens correctly points out the law is well settled that the tolling rule does not apply to transactional work. Therefore, we next consider the evidence regarding whether the malpractice occurred in transactional work rather than in the Cedar Point lawsuit.

Kitchens asserts that the review, editing, and circulation of the response letter was transactional in nature, and not done as part of the prosecution of the Cedar Point lawsuit. In granting summary judgment, the trial court concluded that Kitchens established as a matter of law that the work on the letter was transactional. We disagree. The letter sent to the Cedar Point property owners involved the parties to the Cedar Point lawsuit and the subject matter of that lawsuit. It was sent in response to a letter sent by the defendant in that lawsuit in what was arguably an attempt to influence the outcome of the Cedar Point lawsuit. It was generated by Carpenter, the client, to address the points in the Von Schmidt letter. But for the Cedar Point lawsuit, neither letter would exist. While not a pleading or motion filed in the Cedar Point suit, Kitchens included the work he did on the letter in an itemized invoice sent to JC Project and

7

Carpenter which was identified as a bill for work done on the Cedar Point lawsuit. It is disingenuous to argue that the creation and circulation of the response letter was not a tactical response to Von Schmidt's letter intended for posturing in the Cedar Point lawsuit.

A more complicated but analogous factual scenario was presented to our sister court in *Renda*. In reversing the summary judgment in favor of the attorney, the court concluded that the circumstances of that case at the very least fell within "the *Hughes* equation as modified in *Gulf Coast*" and created a material issue of fact regarding whether the attorney proved his entitlement to summary judgment on limitations as a matter of law. *Renda*, 2018 WL 1833523, at \*6. In that case, the attorney offered advice to the client as to the transfer of corporate assets to pay certain creditors which ultimately subjected the client to personal liability to the government. The court concluded that "to simply equate advice about a transfer under the circumstances here to mere transactional work would be too shallow of an analysis." *Id*. at \*7. We reach the same conclusion in the present case, based on the summary judgment evidence and facts before us.

To be entitled to summary judgment based on his limitations defense, Kitchens must conclusively establish the date JC Project's and Carpenter's cause of action accrued, negate the applicability of the *Hughes* tolling doctrine, and prove as a matter of law that the malpractice claim is time barred. *See Won Pak v. Harris*, 313 S.W.3d 454, 459 (Tex. App.—Dallas 2010, pet. denied). Reviewing the entire record in the light most favorable to JC Project and Carpenter, we conclude that Kitchens did not prove as a matter of law that the alleged negligent review of the letter to the Cedar Point property owners constituted transactional work. However, the failure to establish as a matter of law that the work was transactional does not establish as a matter of law that the work was not transactional. The facts presented as part of the summary judgment evidence strongly suggest the alleged attorney malpractice associated with the decision to create and circulate the response letter was committed during "the prosecution or defense of a claim that results in litigation." *See Yancy*, 236 S.W.3d at 782. However, that question is not properly before us because it is not a subsidiary question fairly included in the issue of whether Kitchens, as movant, met his burden as a matter of law. *See* TEX. R. APP. P. 38.1(f). When a court of appeals reverses the trial court's grant of summary judgment and remands the case for trial, no issue of fact or law, other than that the party has failed to show that it was entitled to judgment as a matter of law, is established by that ruling. *See First Nat'l Bank in Graham v. Sledge*, 616 S.W.2d 954, 957 (Tex. App.–Fort Worth 1981), *rev'd on other grounds*, 653 S.W.2d 283 (Tex. 1983). Ultimately, it may be up to the fact-finder to determine the parties' intentions in creation of the

8

response letter which may be further developed as the litigation progresses. *See Renda*, 2018 WL 1833523, at \*7.

Because Kitchens did not prove as a matter of law that the *Hughes* tolling rule does not apply in this case, the trial court erred in granting summary judgment in favor of Kitchens. *See Frost Nat'l Bank*, 315 S.W.3d at 508; *Jennings*, 917 S.W.2d at 793. There remains a fact question whether the alleged malpractice in this case is within a category of legal malpractice cases encompassed within the *Hughes* definition as expanded by *Gulf Coast* or whether Kitchens's advice to prepare a response to Von Schmidt's letter and his subsequent review and edit of Carpenter's draft pertained merely to transactional work that had no connection to the prosecution or defense of the Cedar Point lawsuit, but resulted in defamation litigation subsequently brought by Von Schmidt against Carpenter. *See Renda*, 2018 WL 1833523, at \*7. We sustain JC Project's and Carpenter's sole issue.

## DISPOSITION

Having determined that Kitchens did not meet his burden, we *reverse* the trial court's judgment and *remand* the case to the trial court for further proceedings.

GREG NEELEY
Justice

Opinion delivered June 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 29, 2018**

**NO. 12-17-00130-CV**

**JC PROJECT MANAGEMENT SERVICES, INC. AND JACK CARPENTER,**
Appellants
V.
**TRAVIS KITCHENS,**
Appellee

Appeal from the 258th District Court
of Trinity County, Texas (Tr.Ct.No. 22003)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the trial court's judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below is **reversed** and the cause is **remanded** to the trial court for further proceedings consistent with the court's opinion of this date. It is further ORDERED that all costs in this cause expended in this court be, and the same are, hereby adjudged against the Appellee, **TRAVIS KITCHENS**, for which let execution issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*