**APEX TOWING COMPANY, Apex Barge Company, and Apex Oil Company, Petitioners,**

v.

**William M. TOLIN, III, Benckenstein & Oxford, L.L.P. and Hebert, Mouledoux & Bland, Respondents.**

No. 99–1165.

Supreme Court of Texas.

Argued Oct. 11, 2000.

Decided March 1, 2001.

Rehearing Overruled April 26, 2001.

Raymond Jude Blackwood, John H. Glover, Chamberlain Hrdlicka White Williams & Martin, Houston, for Petitioner.

Sam W. Cruse, Jr., Billy Shepherd, Cruse Scott Henderson & Allen, Houston, George Michael Jamail, Reaud Law Firm, Beaumont, for Respondent.

Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice BAKER, Justice ABBOTT and Justice O'NEILL joined.

In this cause we reexamine when the statute of limitations in a legal-malpractice case should be tolled. Petitioners sued respondent attorneys for mishandling the defense of a maritime personal-injury lawsuit. The trial court granted the attorneys' motions for summary judgment based on limitations. The court of appeals affirmed. 997 S.W.2d 903. It concluded that the tolling rule we announced in

*Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991), was modified by our later decision in *Murphy v. Campbell,* 964 S.W.2d 265 (Tex.1997), and did not toll limitations in this case. 997 S.W.2d at 905. We conclude that *Murphy* did not modify the rule we announced in *Hughes,* and today we reaffirm that rule: When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded. We therefore reverse the court of appeals' judgment and remand this cause to the trial court for further proceedings.

Petitioners Apex Towing Company, Apex Barge Company, and Apex Oil Company (collectively "Apex") hired respondents William M. Tolin, III, of the Texas law firm of Benckenstein & Oxford (collectively "Oxford"), and later the Louisiana law firm of Hebert, Mouledoux & Bland (Bland), to defend them against a maritime personal-injury suit in a Texas court. The plaintiff seaman in that suit was injured while boarding a vessel when the wash of a tugboat owned by Apex caused him to fall from the gangplank. In its legal-malpractice case, Apex alleges among other things that Oxford and Bland failed to file a timely maritime limitation-of-liability pleading, leaving Apex exposed to a judgment in excess of the value of the vessel and its freight. On August 31, 1994, the trial court in the underlying personal-injury suit rendered judgment on a jury verdict for an amount in excess of any limit that could have been imposed had Apex's attorneys filed a timely maritime-limitation pleading. Apex hired additional counsel to file post-judgment motions and an appeal. The case was ultimately settled, and the court of appeals dismissed the appeal on May 19, 1995.

On August 31, 1995, Apex filed a legal-malpractice suit against Oxford and Bland in Louisiana. That case was later dismissed without prejudice. On February 19, 1997, Apex filed this lawsuit against both law firms, alleging among other things that the attorneys breached the standard of care by failing to file a timely maritime-limitation pleading, failing to investigate and pursue appropriate discovery, failing to file special exceptions, and failing to submit an appropriate jury charge and instructions. Oxford and Bland moved for summary judgment on the grounds that the two-year statute of limitations on Apex's malpractice claim began to run no later than January 27, 1995, when the parties purportedly agreed to settle the underlying personal-injury case. The trial court granted summary judgment for the attorneys.

The court of appeals affirmed the trial court's judgment. 997 S.W.2d 903. The court ruled that Apex sustained a legal injury no later than August 31, 1994, the date of the underlying judgment in excess of any maritime limit of liability, and that Apex discovered or should have discovered the elements of its malpractice claim at that time. *Id.* at 905. The court rejected Apex's contention that the *Hughes* rule tolled limitations while Apex's appeal was pending. Citing *Murphy,* the court concluded that "the [Supreme] Court has subsequently narrowed the tolling provision to situations where the client is continuing to use the same lawyer in the pending litigation." *Id.* The court then determined that "[i]nasmuch as Apex had replaced the appellees with new counsel by no later than January 27, 1995, the rule as originally stated in *Hughes* no longer applied." *Id.*

The court of appeals in this case is not alone in its view that our decision in *Murphy* narrowed or limited application of the

*Hughes* rule to situations in which a party is forced to obtain new counsel. *See Eiland v. Turpin, Smith, Dyer, Saxe & McDonald,* 16 S.W.3d 461, 469 (Tex.App.—El Paso 2000, pet. filed); *Brents v. Haynes & Boone, L.L.P.,* 10 S.W.3d 772, 777–78 (Tex. App.-Dallas 2000, pet. filed); *Nunez v. Caldarola,* 2 S.W.3d 755, 759 (Tex.App.—Corpus Christi 1999, pet. filed); *Swift v. Seidler,* 988 S.W.2d 860, 861–62 (Tex. App.—San Antonio 1999, pet. denied); *Norman v. Yzaguirre & Chapa,* 988 S.W.2d 460, 462–63 (Tex.App.—Corpus Christi 1999, no pet.). One court of appeals has held to the contrary, *see Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied), while in other cases courts have applied *Hughes* without mentioning *Murphy* or without noting any tension between the two. *See Vanasek v. Underkofler,* 1999 WL 314822 (Tex.App.—Dallas 1999), *rev'd in part on other grounds,* —— S.W.3d ——, 2000 WL 33191375 (Tex.2001); *Guillot v. Smith,* 998 S.W.2d 630, 633 (Tex.App.—Houston [1st Dist.] 1999, no pet.). We granted Apex's petition for review to clarify when the *Hughes* tolling rule applies.

Apex argues that the bright-line rule we established in *Hughes* was not modified or limited by *Murphy.* It emphasizes that in *Murphy* the Court held only that the tolling rule does not apply to accounting-malpractice cases; thus in legal-malpractice cases, limitations remains tolled until the terminal point in the underlying litigation, regardless of when the malpractice defendant ceased to have an attorney-client relationship with the malpractice plaintiff. In *Murphy,* in a section responding to one of the dissenting opinions in that case, the Court stated that *Hughes* "is expressly limited to claims against a lawyer arising out of litigation where the party must not only assert inconsistent positions but must also obtain new counsel." 964 S.W.2d at 273. According to Apex, if that description of the *Hughes* rule were true, then *Hughes* itself was wrongly decided because the defendant attorney in *Hughes* had withdrawn more than two years before the clients filed suit. *See also Gulf Coast Inv. Corp. v. Brown,* 821 S.W.2d 159, 160–61 (Tex.1991) (applying *Hughes* to case in which new counsel was hired more than two years before malpractice claim filed).

Oxford and Bland respond that in *Murphy* the Court modified the *Hughes* rule so that the statute of limitations begins to run not later than when a party hires new counsel to handle the underlying litigation. Once new counsel is hired, they argue, the policy reasons behind the *Hughes* rule no longer apply. They also argue that the policy reasons behind *Hughes* no longer apply once parties agree to settle the underlying case because a settlement obviates the risk that the client will be forced to take inconsistent positions, and fixes the amount of damages caused by the malpractice. Thus the attorneys argue that the *Hughes* tolling rule should apply on a case-by-case basis, only when the policy reasons behind the rule also apply directly to the facts of the specific case under review.

 The legal-malpractice claims presented in this case are governed by the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE § 16.003(a); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988). Limitations generally begins to run when the cause of action accrues, which we have determined means when facts have come into existence that authorize a claimant to seek a judicial remedy. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex.1998); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). We have further determined that the discovery rule

applies to legal-malpractice cases, so that in such cases, limitations does not begin to run until the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action. *Willis,* 760 S.W.2d at 646. In *Willis,* we extended the discovery rule to legal-malpractice actions based in part on the special relationship between attorney and client and on the difficulty posed for a client in determining whether or when malpractice may have occurred. *Willis,* 760 S.W.2d at 645. Additional considerations formed the basis for our decision in *Hughes* to toll the statute of limitations in certain types of legal-malpractice actions.

In *Hughes,* we articulated two policy considerations as the bases for tolling the statute of limitations when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation until all appeals on the underlying claim are exhausted. *Hughes,* 821 S.W.2d at 156-57. We first pointed out that the legal-injury rule and the discovery rule can force a client into the untenable position of having to adopt inherently inconsistent litigation postures in the underlying case and the malpractice case. *Id.* at 156. We then explained that limitations should be tolled for the malpractice action because the viability of that action depends on the outcome of the underlying litigation. *Id.* at 157. Since we adopted the tolling rule in *Hughes,* we have applied that rule without further qualification in every legal-malpractice case meeting the *Hughes* parameters. *See Aduddell v. Parkhill,* 821 S.W.2d 158 (Tex.1991); *Gulf Coast Inv. Corp. v. Brown,* 821 S.W.2d 159 (Tex.1991); *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480 (Tex.1992); *Sanchez v. Hastings,* 898 S.W.2d 287 (Tex. 1995). In *Sanchez* we further elaborated on the first policy aspect of the *Hughes* rule, noting that attorney-client trust would be eroded if the client had to scrutinize every stage of the case for possible missteps. 898 S.W.2d at 287.

In this case, the court of appeals added a continued-representation requirement based on statements about *Hughes* drawn from *Murphy.* 997 S.W.2d at 905. While we understand how that court could reach that conclusion, we reiterate that continued representation by the allegedly malpracticing attorney was not a requirement set out in *Hughes.* Hiring a new attorney would not necessarily eliminate the problem of a client having to adopt inconsistent positions in the underlying case and the malpractice case. The client could still be forced to defend what the allegedly malpracticing attorney did in the underlying case while attacking those same actions in the malpractice case. Indeed, if continued representation were required to receive the benefit of the tolling rule, we would have reached the opposite result in *Hughes* and *Gulf Coast Investment Corp.,* because in both of those cases the malpracticing attorney had been replaced more than two years before the client filed the malpractice claims. *See Hughes,* 821 S.W.2d at 156; *Gulf Coast Inv. Corp.,* 821 S.W.2d at 160; *accord Washington v. Georges,* 837 S.W.2d 146, 148 (Tex.App.— San Antonio 1992, writ denied).

Moreover, a close reading of *Murphy* does not support the conclusion that we modified the *Hughes* rule in that case. First, the specific relevant holding of *Murphy* is that *Hughes* does not apply to malpractice actions against accountants. 964 S.W.2d at 272. We would not have modified the *Hughes* rule in a case in which we directly held that *Hughes* did not apply. In the section in which we held that the *Hughes* rule did not apply, we stated, "We expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that re-

sults in litigation." *Id.* We then explained that requiring the client to file a malpractice claim against the lawyer while the underlying case was still pending would make it virtually impossible for the lawyer to continue with the representation. *Id.* In a separate section, responding specifically to one of the dissenting opinions, we did combine the rule and the explanation into one statement, *id* . at 273, but that does not change the fact that *Murphy* plainly states, "[w]e restricted [the *Hughes* rule] to the circumstances presented." *Id.* at 272. Those circumstances did not include continued representation by the allegedly malpracticing lawyer.

As we noted in *Hughes,* the tolling rule we adopted is not universally followed. 821 S.W.2d at 157 n. 5; *see also* Mallen, *Limitations and the Need for "Damages" in Legal Malpractice Actions,* 60 DEF. COUNS. J. 234, 247–48 (1993); Bauman, *The Statute of Limitations for Legal Malpractice in Texas,* 44 BAYLOR L.REV. 425, 451 (1992). We continue to believe, however, that in the area of limitations, bright-lines rules generally represent the better approach, and that the policy reasons underlying the *Hughes* rule appropriately balance the competing concerns of the need to bar stale claims and avoid prejudice to defendants yet preserve a reasonable opportunity for plaintiffs to pursue legitimate claims. Thus we remain unpersuaded by Oxford and Bland's arguments that the fact that Apex hired new counsel and ultimately settled the litigation removes this case from the scope of the *Hughes* rule. In fact, in this case the parties dispute the date a settlement was agreed upon or effected, thus demonstrating the need for a bright line when establishing rules for limitations.

Moreover, although tolling limitations is conceptually distinct from applying the discovery rule to delay commencement of lim-

itations, we note that clear and strict application of the *Hughes* tolling rule comports with our efforts to maintain a categorical approach when determining whether the discovery rule applies to certain types of claims. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 457–58 (Tex.1996). As we have explained in the discovery-rule context, using a categorical approach brings predictability and consistency to the jurisprudence. *See S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex.1996); *HECI,* 982 S.W.2d at 886. Using such an approach means we do not determine when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies, based on whether the policy reasons behind the rule are served by applying the rule in that type of case. *See, e.g., Childs v. Haussecker,* 974 S.W.2d 31, 37 (Tex.1998); *HECI,* 982 S.W.2d at 886.

Similarly, without re-examining whether the policy reasons behind the tolling rule apply in each legal-malpractice case matching the *Hughes* paradigm, courts should simply apply the *Hughes* tolling rule to the category of legal-malpractice cases encompassed within its definition. *See Farah v. Mafrige & Kormanik, P.C.,* 927 S.W.2d 663, 679 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Burnap v. Linnartz,* 914 S.W.2d 142, 147 (Tex.App.—San Antonio 1995, writ denied); *Utica Ins. Co. v. Pruitt & Cowden,* 902 S.W.2d 143, 147 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Hoover v. Gregory,* 835 S.W.2d 668, 672 (Tex.App.—Dallas 1992, writ denied). To the extent they hold otherwise, we disapprove of *Swift v. Seidler,* 988 S.W.2d 860, 861–62 (Tex.App.—San Antonio 1999, pet. denied), *Norman v. Yzaguirre & Chapa,* 988 S.W.2d 460, 462–63 (Tex.App.—Corpus Christi 1999, no pet.), and *Dear v.*

*Scottsdale Insurance Co.,* 947 S.W.2d 908, 918 (Tex.App.—Dallas 1997, writ denied).

In this case, Apex alleges that Oxford and Bland committed malpractice while defending Apex in the underlying personal-injury litigation. The *Hughes* rule thus applies to this case. As the underlying case was not finally concluded until May 19, 1995, when the court of appeals issued its order dismissing Apex's appeal, Apex's malpractice suit was timely when filed on February 19, 1997. The court of appeals therefore erred in affirming the trial court's summary judgment on limitations. Accordingly, we reverse the court of appeals' judgment and remand this cause to the trial court for further proceedings.

Justice OWEN, did not participate in the decision.