NO. 07-07-0448-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 20, 2009
_____

STEPHEN FINLEY,

Appellant

v.

JOLYN C. WILKINS,

Appellee
_____

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2006-599,978; HON. PAULA LANEHART, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Pending before the court is an appeal of a final summary judgment. Through that judgment, the trial court concluded that limitations barred the legal malpractice action of Stephen Finley against Jolyn C. Wilkins. The former had sued the latter to recover $1800 (which represented the remainder of the $5000 fee Wilkins initially received from and then returned to Finley), interest, and attorney's fees for representing himself *pro se*. We affirm the summary judgment.

*Background*

According to Finley, he hired Wilkins to "find whether and by what means a wrongful custody verdict in December 1997 could be corrected, reversed, reheard, or remedied by any other means available." The two agreed to move for a new trial citing jury misconduct as basis for the relief.[1] The motion was timely filed, then denied on April 3, 1998. Thereafter, the trial court entered a final divorce decree incorporating the jury's custody verdict in August of 1998. No appeal was taken from that final judgment.

Before the day of the hearing on the motion for new trial, Finley discovered that evidence of a jury's deliberations was inadmissible. This caused him to question the viability of the motion since, for the most part, evidence of what occurred during those deliberations was pivotal to its success. The matter was broached with Wilkins or one of her employees. Within weeks of the motion being denied, Finley also spoke about it with several law professors who allegedly "expressed amazement that any attorney would file such a motion, since the doctrine of 'jury sanctity' . . . was very well-known and essentially inviolable." They also allegedly told him that "there was no chance for the motion to succeed" or "that [it] was doomed from the time you guys started talking about it."

By October of 1999, Finley had retained another attorney and petitioned to modify the custody provisions specified in the August 1998 decree. That petition was denied in 2002, and the decision to deny it was affirmed on December 9, 2004. Finley then initiated the current malpractice action on July 19, 2006, contending that "the motion [for new trial] was not pursued competently."

---

[1]The misconduct purportedly consisted of several jurors considering gender in reaching their verdict and in several jurors inaccurately answering questions propounded to them during voir dire.

*Discussion*

That a two-year period of limitations applies to legal malpractice claims is undisputed. TEX. CIV. PRAC. & REM. CODE ANN. §16.003(a) (Vernon Supp. 2008); *Parsons v. Turley,* 109 S.W.3d 804, 807-08 (Tex. App.–Dallas 2003, pet. denied). Similarly clear is that unless the statute of limitations was tolled, Finley's suit against Wilkins was untimely. Thus, Finley proffered two theories which he believed tolled limitations. They consisted of the discovery doctrine and the application of the *Hughes* rationale. We consider the former first.

Normally, limitations begin to run when a cause of action accrues. *South Plains Switching, Ltd. Co. v. BNSF Ry. Co.,* 255 S.W.3d 690, 707 (Tex. App. - Amarillo 2008, pet. denied). A legal malpractice cause of action generally accrues when facts come into existence that authorize a client to seek a judicial remedy for a legal injury. *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex. 2001). At times, however, the period does not begin to run until the client discovers or through the exercise of reasonable diligence should have discovered the facts establishing the elements of a cause of action. *Id.* at 120-21. Given that the purported misfeasance of Wilkins involved the motion for new trial filed in his divorce proceeding, that Finley expressed doubts about the grounds urged in and the viability of the motion, and that he also spoke with two law professors about the matter and their purported comments confirmed his beliefs, we conclude, as a matter of law, that Finley knew or reasonably should have known about the facts giving rise to his claims before entry of the August 1998 divorce decree. So, his claim had accrued and limitations had begun to run before then.

3

As for the second argument, we note that in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991) our Supreme Court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim . . . is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157; *accord, Underkofler v. Vanasek*, 53 S.W.3d 343, 346 (Tex. 2001) (wherein counsel was changed while the trial remained pending and holding that limitations did not run until the trial resulted in a final judgment that went unappealed). To the phrase "until all appeals on the underlying claim are exhausted," the court added "or the litigation is otherwise finally concluded" via its decision in *Apex Towing Co. v. Tolin*, 41 S.W.3d at 119.

Here, the purported misfeasance occurred during the litigation of child custody issues that arose as part of Finley's divorce. Custody had been awarded by a jury to the mother, and Finley did not want that decision to stand. So, in effort to overturn it, he and Wilkins filed the motion for new trial, which act Finley considered improper. Once that motion was overruled and the results of that litigation were incorporated into the August 1998 divorce decree, all question about which parent would have what conservatorship rights upon divorce were resolved. By that time, Finley had already discussed with others what he believed to be Wilkins' deficient conduct. Given these circumstances, we hold that the underlying claim or suit, for purposes of *Hughes*, was the child custody dispute and litigation culminating in the final divorce decree entered in August of 1998. Since no appeal was taken from that judgment, the two-year limitations period began when it was signed.

4

It may well be that Finley and Wilkins spoke of petitioning for a modification of the custody provisions previously entered. It may well be that Finley also hired another attorney to pursue such relief once the August 1998 decree became final. Yet, just because the subject matter of those discussions and acts involved child custody, the modification proceeding did not become a part or continuation of the initial custody ruling and litigation. Nor did the similarity of topics somehow make the proceedings or claims asserted in each indivisible. The truth is quite the contrary since two distinct processes were involved. Indeed, before there could be a second (*i.e.* modifying the terms of a prior decree), the first (*i.e.* the execution of a prior decree) must have occurred; logically, one cannot modify something that never happened. Furthermore, to modify the terms of conservatorship mandated by the prior final divorce decree, a trial court would have had to find that the circumstances have materially and substantially changed since the date the decree was rendered. TEX. FAM. CODE ANN. §156.101(1) (Vernon 2008); *Zeifman v. Michels,* 212 S.W.3d 582, 589 (Tex. App.–Austin 2006, pet. denied); *Bates v. Tesar,* 81 S.W.3d 411, 426-27 (Tex. App.–El Paso 2002, no pet.). This in turn means that the focal point of the modification process lies not on what existed before entry of the final judgment but rather on what occurred or arose *after* entry of that decree. In view of this, we cannot but consider the two matters as distinct suits or legal proceedings, even though they may have the same cause number. And, this leads us to conclude here that the modification suit subsequently prosecuted by Finley did not toll limitations, per *Hughes*, on any claims arising from the decision to file the motion for new trial.

In short, we cannot say that the trial court erred in granting summary judgment against Finley on the basis of limitations.  That final summary judgment is affirmed.


Brian Quinn
Chief Justice