

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00252-CV

JOSEPH & DEBRA DOMINO                                    APPELLANTS

V.

ALLMAND & LEE, PLLC, CHRIS                                 APPELLEES
LEE, AND WELDON R. ALLMAND

----------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 048-262694-12

----------

## OPINION

----------

Appellants Joseph and Debra Domino sued appellees Allmand & Lee, PLLC, Chris Lee, and Weldon R. Allmand for legal malpractice, alleging negligent representation in bankruptcy proceedings from November 6, 2009, to February 24, 2010, when the Dominos' Chapter 13 case was dismissed. The Dominos filed their malpractice suit on November 5, 2012.

The appellees filed traditional motions for summary judgment, arguing that the Dominos' sole claim was barred by the two-year limitations period because their legal representation of the Dominos had ended approximately two years and eight months before the Dominos filed their legal malpractice lawsuit and that the Dominos were aware of the damages allegedly suffered on or about February 24, 2010, when their Chapter 13 case was dismissed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2002 & Supp. 2013); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied) ("A legal malpractice claim is a tort and is governed by a two-year statute of limitations."). The appellees attached the Dominos' original petition to their respective motions.

In their summary judgment answer, the Dominos responded that the statute of limitations was tolled in their case under *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991), and *Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001). They attached a copy of the bankruptcy court's docket to their response and argued that limitations began running on July 19, 2011, when they "were forced to begin liquidation proceedings by converting the [subsequently filed Chapter 11] case to Chapter 7," because that was when they "had suffered from Defendants' errors in a non-appealable way." The bankruptcy court's docket shows that a Chapter 11 petition was filed on February 26, 2010, that a motion to convert the case from Chapter 11 to Chapter 7 was filed on June 11,

2

2011, and that the Chapter 7 case was closed on October 10, 2012.[1] The trial court granted the appellees' motions for summary judgment, and this appeal followed.

In a single issue, the Dominos argue that their serial bankruptcy proceedings had not fully and finally concluded until July 19, 2011, when they converted their Chapter 11 case to a Chapter 7 case, and that limitations were tolled under *Hughes* until that point. They reference their first Chapter 13 petition, in Case No. 09-46626-dml13, which was dismissed on October 28, 2009; their second Chapter 13 petition, which was filed by appellees in Case No. 09-47153-dml13 and which was dismissed on February 24, 2010; and their Chapter 11-converted-to-7 petition in Case No. 10-41270-dml7, which was filed on February 26, 2010, and closed on October 10, 2012.

Generally, when a cause of action accrues is a question of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). "[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals *on the underlying claim* are exhausted." *Hughes*, 821 S.W.2d at 157 (emphasis added). In *Hughes*, the Hugheses' counsel made an adoption-proceeding mistake in 1982 that let the biological mother prevail in the 1985

---

[1]The trial court sustained objections to the Dominos' evidence attached to their various filings, and the Dominos do not appeal these evidentiary rulings.

appeal of the termination-of-parental-rights suit; the supreme court overruled the Hugheses' motion for rehearing in that case on July 10, 1985. *Id.* at 155–56. The Hugheses sued counsel for malpractice on May 21, 1987, which the supreme court held remained within limitations because of tolling until the termination case appeals were exhausted—i.e., July 10, 1985. *Id.* at 156–58 & n.6. The court reasoned that if forced to bring the malpractice case while the termination case proceeded on appeal, the Hugheses would have been forced to make inconsistent claims, compromising the likelihood of success in both suits; therefore, "[l]imitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first." *Id.* at 157; *see also Apex*, 41 S.W.3d at 121 (referencing *Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex. 1995), for the proposition that attorney-client trust would be eroded if the client had to scrutinize every stage of a case for possible missteps while the case proceeded). The supreme court reaffirmed the *Hughes* rule in *Apex* and added that limitations is tolled either until all appeals on the underlying claim are exhausted "or the litigation is otherwise finally concluded," i.e., by settlement and dismissal of appeal. 41 S.W.3d at 118–19, 123 (holding that the date of the dismissal of appeal after settlement in the underlying suit was the date that limitations began to run).

The Dominos argue that the term "finally" with regard to a determination of whether a case is "finally concluded" should be evaluated case by case "because for one case it may be completely concluded while the next it could just be a

4

single stage of litigation."[2]  They contend that here, any party in interest could have moved to reinstate the second Chapter 13 bankruptcy case or could have objected to the final report or trustee's dismissal and that their new counsel "could have easily requested that the case be reinstated and then converted to Chapter 11," so the second Chapter 13 case was not "fully and finally concluded" when the case was dismissed on February 24, 2010.  They also argue that all of their appeals were not exhausted in the second case.

We have found no cases applying *Hughes* to a second, separate proceeding as encouraged by the Dominos, and to apply the rule in such a manner would be contrary to the supreme court's reasoning set out in *Hughes* and *Apex*:  the Dominos have not articulated why pursuing their malpractice claim while their Chapter 11 case proceeded with other counsel would have forced them into the untenable position of having to adopt inherently inconsistent litigation postures or how their malpractice claim's viability depended on the outcome of the unappealed Chapter 13 case.  *Cf.* Fed. R. Bankr. P. 8013 (stating that on appeal, a district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings).  Further, the record reflects that no one actually pursued any of the Dominos' propositions set out above; therefore, the

---

[2]The Dominos rely on *Guillot v. Smith*, 998 S.W.2d 630 (Tex. App.—Houston [1st Dist.] 1999, no writ), but *Guillot* is inapposite because, unlike the case before us here, the *Guillot* bankruptcy proceeding was a continuation of the original bankruptcy case, not a new case.  *See id.* at 631–33.

5

particular bankruptcy case in which the alleged malpractice occurred—the second Chapter 13 case—ended with dismissal, which triggered the beginning of the limitations period in the malpractice case. Because the limitations period did not toll under *Hughes* on these facts, we overrule the Dominos' sole issue and affirm the trial court's judgment.


/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED:  July 24, 2014

6