

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00771-CV

Gail **GILLETTE**,
Appellant

v.

Stephen **GRAVES**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI03140
Honorable Richard Price, Judge Presiding

**OPINION ON REHEARING**

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
    Irene Rios, Justice
    Beth Watkins, Justice

Delivered and Filed: March 4, 2020

REVERSED AND REMANDED

On November 20, 2019, the court issued an opinion and judgment in this appeal. Although

a motion for reconsideration en banc is pending, the panel, on its own motion, withdraws its

November 20, 2019 opinion and judgment, and substitutes this opinion and judgment in their

place.[1]

---

[1]This opinion adds citation to two Texas Supreme Court case decided after this court's November 20, 2019 opinion and judgment. Additionally, it corrects a factual assertion in the original opinion that the second and third foreclosure lawsuits were filed by the same lawyer when they were actually filed by two different lawyers.

Gail Gillette sued her former lawyer, Stephen Graves, for legal malpractice. Graves moved for summary judgment, arguing the suit was barred by the two-year statute of limitations. The trial court granted summary judgment and dismissed Gillette's suit. On appeal, Gillette argues her legal malpractice suit was not barred by limitations based on the tolling rule established in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). We reverse and remand.

## BACKGROUND

### *The Foreclosure Litigation*

Gillette hired Graves to resolve accounting discrepancies in her mortgage payments and prevent her mortgage lender from foreclosing on her home. Acting on Gillette's behalf, Graves filed suit against the mortgage lender on July 30, 2010. The suit asked the trial court to enjoin the foreclosure sale of Gillette's home, which was set for August 3, 2010. The trial court temporarily enjoined the lender from foreclosing on Gillette's home. More than two years later, Graves entered into an agreement with the lender and signed an agreed judgment disposing of the suit. According to Gillette, Graves entered into the agreed judgment without her consent. The agreed judgment dismissed "all of [Gillette's] causes of action against" the lender and stated that the lender was "entitled to a declaratory judgment that it may lawfully proceed with the foreclosure sale of the property." The agreed judgment was signed by the trial court on January 8, 2013.

After the dismissal, the lender resumed foreclosure proceedings on Gillette's home. The lender prepared a new notice of foreclosure. Gillette retained another lawyer to represent her. This lawyer filed suit against the lender and obtained a temporary injunction stopping the newly-noticed foreclosure sale of Gillette's home. This suit was eventually dismissed because of the agreed judgment in the suit filed by Graves.

Again, the lender resumed foreclosure proceedings on Gillette's home. The lender actually foreclosed on Gillette's home on December 3, 2013. The lender began eviction proceedings against Gillette. On March 29, 2014, Gillette, who was represented by a third lawyer, filed a wrongful foreclosure suit against the lender. In this suit, Gillette alleged the lender had failed to comply with the terms of the agreed judgment in the initial suit. Gillette obtained a temporary injunction preventing her eviction. Ultimately, Gillette and the lender entered into a settlement agreement that ended the foreclosure dispute. Under the settlement agreement, the lender paid Gillette a sum of money and Gillette vacated her home. The trial court signed an order dismissing the wrongful foreclosure suit on January 29, 2016.

*The Legal Malpractice Suit*

On February 22, 2017, Gillette filed a legal malpractice lawsuit against Graves. Gillette alleged Graves had committed legal malpractice by entering into an agreed judgment in the first suit without Gillette's consent. Graves moved for summary judgment, asserting that the two-year statute of limitations barred Gillette's legal malpractice claim. Graves argued that Gillette's legal malpractice claim "necessarily accrued not later than the final conclusion of the litigation in which [I] represented [Gillette]." Attached to the summary judgment motion was a certified copy of the agreed judgment in the first suit against the lender, which the trial court had signed on January 8, 2013.

Gillette filed a response to the summary judgment motion, arguing her suit was not time-barred because the statute of limitations for her legal malpractice suit was tolled until the foreclosure-related litigation was resolved. Gillette further argued she did not have a viable legal malpractice claim until all the foreclosure litigation was finally concluded.

The trial court granted Graves's summary judgment motion and dismissed Gillette's legal malpractice suit. Gillette appealed.

**STANDARD OF REVIEW**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A summary judgment movant bears the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for summary judgment on the ground that the plaintiff's claim is barred by limitations must conclusively establish the application of the statute of limitations, including the date when limitations began to run. *Id*. at 220.

**LEGAL MALPRACTICE, LIMITATIONS, & THE *HUGHES* TOLLING RULE**

A cause of action for legal malpractice is subject to the two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Generally, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy. *Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018). The determination of the date of accrual of a cause of action is a legal question that we review de novo. *Ghidoni v. Skeins*, 510 S.W.3d 707, 710 (Tex. App.—San Antonio 2016, no pet.).

Texas recognizes a special tolling rule for certain categories of legal malpractice claims. The Texas Supreme Court first articulated this tolling rule in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991), and later reaffirmed it in *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001). The *Hughes* tolling rule as articulated in *Apex* states: "When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded." *Apex*, 41 S.W.3d at 119; *see Hughes*, 821 S.W.2d at 157.

Our analysis is guided by three Texas Supreme Court cases: *Hughes*, *Gulf Coast Investment Corp. v. Brown*,[2] and *Apex*. In *Hughes*, a husband and wife hired a lawyer to help them adopt a child. 821 S.W.2d at 155. The lawyer obtained an affidavit from the child's biological mother voluntarily relinquishing her rights to the child. *Id*. The affidavit named the lawyer, rather than the husband and wife, the child's temporary managing conservator. *Id*. After obtaining the affidavit, the lawyer filed suit to terminate the biological parents' parental rights. *Id*. However, the biological mother changed her mind, revoked the affidavit of relinquishment, and moved to dismiss the parental termination suit. *Id*. The biological mother argued the husband and wife lacked standing to sue. *Id*. The biological mother ultimately prevailed on appeal on her standing argument and the husband and wife's suit was eventually dismissed on this ground. *Id*. at 156.

Thereafter, the husband and wife sued their lawyer for malpractice, arguing he was negligent in obtaining a relinquishment affidavit that named himself, instead of his clients, the child's temporary managing conservator. *Id*. In response, the lawyer argued the legal malpractice suit was barred by the two-year statute of limitations. *Id*. The Texas Supreme Court disagreed with the lawyer, holding that the statute of limitations on the legal malpractice suit was tolled until all the appeals on the underlying claim were exhausted. *Id*. at 157. In adopting this rule, the supreme court recognized that requiring the clients to file their legal malpractice suit earlier would have forced them to adopt inherently inconsistent postures in the termination appeal and in the malpractice suit and would have compromised their likelihood of success in both cases. *Id*. Specifically, the husband and wife would have been placed in the position of claiming in their malpractice case that their lawyer had committed malpractice in handling their termination suit and that, but for his negligence, the termination suit and adoption would have succeeded. *Id*. On

---

[2]821 S.W.2d159 (Tex. 1991).

the other hand, in pursuing their termination appeal, they would have had to make the inconsistent

claim that their lawyer's actions were correct or, at least, not fatal to their claims. *Id*. The supreme

court further explained its reasoning:

> Where "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) (limitations tolled while prior submission of same case was being appealed); *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex. Civ. App.—Austin 1922, writ dism'd) (limitations on suit for dividends tolled while suit to determine ownership of stock was being appealed); *Pease v. State*, 228 S.W. 269, 270–71 (Tex. Civ. App.—El Paso 1921, writ ref'd) (plaintiff's cause of action in suit for salary did not accrue until final decision in quo warranto proceeding that defendant was not entitled to job); *Fields v. Austin*, 30 S.W. 386, 387 (Tex. Civ. App. 1895, writ ref'd) (cause of action for rent did not accrue until appeals exhausted on suit to determine title to land).
>
> We conclude that the rationale applied in these cases is also appropriate when a client's cause of action for malpractice arises during the attorney's prosecution or defense of a claim which results in litigation. Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first.
>
> Therefore, we hold that when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted. We join other jurisdictions in adopting this well-reasoned rule.

*Id*.

In *Gulf Coast Investment Corp. v. Brown*, the Texas Supreme Court extended the *Hughes*

rule to toll limitations during the pendency of a third-party suit rather than an appeal. 821 S.W.2d

159, 160 (Tex. 1991). In *Gulf Coast*, lawyers had represented an investment company during a

non-judicial foreclosure sale of real property. *Id*. After the foreclosure sale, the investment

company was sued by the former property owners for wrongful foreclosure. *Id*. When the wrongful

foreclosure suit was resolved, the investment company sued its former lawyers for their actions

related to the foreclosure sale. *Id*. The Texas Supreme Court held that the malpractice suit was not barred by limitations because the *Hughes* tolling rule applied. *Id*. "[W]hen an attorney's malpractice in conducting a non-judicial foreclosure sale of real property results in a wrongful foreclosure action against the client, the statute of limitations on the malpractice claim is tolled until the wrongful foreclosure action is finally resolved." *Id*. "We see no reason why the tolling rule announced by this court in *Hughes* [] should not apply when the attorney's malpractice results, not in an appeal on the underlying claim, but in a wrongful foreclosure action by a third-party against the client." *Id*.

In *Apex*, the Texas Supreme Court further held a legal malpractice case was not removed from the scope of the *Hughes* rule, despite the hiring of new lawyers and the settlement of the underlying litigation. 41 S.W.3d at 120–22. The facts in *Apex* showed that lawyers were hired to defend a client in a personal injury suit. *Id*. at 119. After trial, the client hired additional lawyers to file post-judgment motions and an appeal. *Id*. The case settled while on appeal. *Id*. The client did not file its malpractice suit until after the case was settled and the appeal was dismissed. *Id*. The lawyers argued the malpractice suit was barred by limitations because the *Hughes* tolling rule no longer applied once the client hired new counsel. *Id*. at 120. However, the Texas Supreme Court rejected the argument that the *Hughes* tolling rule is limited to situations in which the client continues to be represented by the same lawyer. *See id.* at 121 ("[W]e reiterate that continued representation by the allegedly malpracticing attorney was not a requirement set out in *Hughes*.").

In *Apex*, the supreme court discussed *Hughes*'s policy considerations. *Id*. First, limitations should be tolled in the malpractice case because clients should not be forced to adopt inherently inconsistent litigation postures in the underlying litigation and the malpractice case. *Id*. Second, limitations should be tolled in the malpractice case because the viability of the malpractice case depends on the outcome of the underlying litigation. *Id*.

## DISCUSSION

On appeal, Gillette argues the *Hughes* rule applied to toll the time for filing her claim. Gillette emphasizes that her second and third foreclosure suits were filed to "undo" the harm Graves had done in handling the dispute with her mortgage lender, and therefore, they functioned like an appeal. Gillette also argues her legal malpractice action was not viable when the trial court signed the agreed judgment in the initial suit on January 8, 2013, and did not become viable until the trial court rendered judgment dismissing the last foreclosure-related suit on January 29, 2016.

We agree with Gillette that her legal malpractice claim against Graves fits within the *Hughes/Apex* rule, which provides: "When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded." *Apex*, 41 S.W.3d at 119; *see Hughes*, 821 S.W.2d at 157. In its recent discussion of the *Hughes/Apex* tolling rule, the Texas Supreme Court explained the rule's application as follows:

> The rule does not apply every time legal "malpractice . . . results in litigation." Rather, we included a critical limitation: the malpractice must be committed "in the prosecution or defense of a claim."
>
> Our *Hughes* tolling cases confirm that these terms carry their ordinary meaning within the legal-services context. "Claim" refers to "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and "[a] demand for money, property, or a legal remedy to which one asserts a right . . . ." "Prosecution" and "Defense" are opposing sides of the same coin. To prosecute something means "[t]o commence and carry out (a legal action)." Defense refers to "[a] defendant's stated reason why the plaintiff . . . has no valid case" and to defend a claim means "to do something [protective] . . . [t]o deny, contest, or oppose (an allegation or claim) . . . [t]o represent (someone) as an attorney; to act as legal counsel for someone who has been sued or prosecuted."

*Erikson v. Renda*, 590 S.W.3d 557, 567 (Tex. 2019) (internal citations omitted). Additionally, the term "litigation" has been construed broadly. *See Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex. 1995) (holding, in a malpractice case complaining of the lawyers' failure to sue a tortfeasor in a wrongful death case, that limitations was tolled until all litigation concluded against other

tortfeasors liable for the same indivisible injury); *Gulf Coast*, 821 S.W.2d at 160 (holding limitations on a legal malpractice suit implicating a lawyer's actions in a non-judicial foreclosure sale was tolled during a subsequent suit against client for wrongful foreclosure); *see also Estate of Whitsett v. Junell*, 218 S.W.3d 765, 771 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (construing the phrase "claim that results in litigation" to include all claims for an indivisible injury that an attorney is hired to pursue on behalf of a client, as well as any claim the attorney must assert on behalf of his client in the exercise of reasonable care).

Here, Gillette hired Graves to resolve accounting discrepancies in her mortgage payments and to prevent her mortgage lender from foreclosing on her home. The "prosecution or defense" of Gillette's "claim," that is, Gillette's assertion of her rights with regard to her home, "result[ed] in litigation," specifically, the filing of three foreclosure-related suits against her mortgage lender. The litigation on Gillette's "claim" did not "finally conclude[]" until the trial court signed the judgment dismissing the third suit challenging the foreclosure of Gillette's home. This judgment was not appealed. Therefore, the judgment dismissing the third suit was the terminal point in the litigation concerning the foreclosure on Gillette's home, and Gillette's legal malpractice claim was not viable until this time. If this court were to hold to the contrary and conclude limitations was not tolled, Gillette would have been forced into adopting the "inherently inconsistent litigation postures" the *Hughes* court described as "untenabl[e]." *See* 821 S.W.2d at 156. "Specifically, had [Gillette] sued [Graves] for malpractice while seeking to" prevent the eviction by claiming wrongful foreclosure based on the lender's failure to comply with the terms of the agreed judgment obtained by Graves in the first foreclosure proceeding, Gillette "would have been placed in the position of claiming that [Graves] committed malpractice in the handling of [the first foreclosure proceeding] and that, but for [Graves's] negligence," no agreed judgment would have been entered. In pursuing her claim of wrongful foreclosure based on the lender's breach of the agreed

judgment, however, Gillette "had to make the inconsistent claim that [Graves's] actions were correct." *See id*. at 157. As the *Hughes* court recognized, this type of conflict would compromise Gillette's success in both suits. *See id*.

Graves argues the trial court properly granted summary judgment on Gillette's legal malpractice claim because under *Hughes*, the statute of limitations on legal malpractice claims "begins to run on the date of final adjudication of a litigated matter in which the malpractice is alleged to have occurred." Graves further argues: "A fair reading of existing case law is that direct attack *by appeal* of a judgment alleged to have been entered as a result of legal malpractice tolls the statute of limitations on assertion of a claim for that malpractice until the appeal is concluded."[3] (emphasis in original). We disagree. The fact that Gillette pursued a remedy in the trial court and not the appellate court is not determinative. In *Gulf Coast*, the Texas Supreme Court held that a suit filed by a third-party against the client operated to toll limitations. 821 S.W.2d at 160. Additionally, the language of the *Hughes* tolling rule as articulated in *Apex* does not support Graves's argument: "[T]he statute of limitations on a malpractice claim . . . is tolled until all appeals on the underlying claim are exhausted *or the litigation is otherwise finally concluded*." *Apex*, 41 S.W.3d at 119 (emphasis added). We conclude the *Hughes* tolling rule is not limited to situations in which a judgment is under direct attack by appeal. *See Gulf Coast*, 821 S.W.2d at 160; *Nowak v. Pellis*, 248 S.W.3d 736, 740–41 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (applying the *Hughes* rule to toll limitations until all litigation ended on the underlying medical malpractice claim, including the dismissal of a separate bill of review suit against one of the defendants); *see also Skelton v. Gray*, No. 18-0386, 2020 WL 868122, at *4-5 (Tex. February 21,

---

[3]The only case Graves cites in his appellate brief is *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991).

2020) (holding the limitations period for a legal malpractice claim involving representation in a criminal case was tolled during both direct appeal and post-conviction proceedings).

We hold Gillette's cause of action for legal malpractice against Graves accrued when the foreclosure litigation came to an end. Under the *Hughes* rule, Gillette's legal malpractice claim did not accrue until the trial court signed the judgment dismissing the last foreclosure-related suit on January 29, 2016.

Gillette filed her legal malpractice suit against Graves on February 22, 2017, which was within the two-year statute of limitations. Therefore, Gillette's legal malpractice suit was not barred by the two-year statute of limitations. Because Graves failed to meet his burden to establish the affirmative defense of limitations, he was not entitled to summary judgment. We conclude the trial court erred in granting summary judgment in favor of Graves.

## CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice