CONCUR; Opinion Filed June 10, 2022



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-18-00539-CV**

**GARY LEW MAYPOLE, SR., Individually and as Personal Representative of the Estate of Gary Lew Maypole II, Deceased, and TAMARA JEAN MAYPOLE, as Next Friend of H.K.M. and D.T.M., Minors, Appellants**
**V.**
**ACADIAN AMBULANCE SERVICE, INC., and ACADIAN AMBULANCE SERVICE OF TEXAS, LLC, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-11335**

## CONCURRING OPINION
Before the Court sitting En Banc.
Opinion by Justice Schenck

I agree with the en banc Court's judgment, but I concur in the Court's decision because I cannot join in the majority's analysis.

**I.**

The Texas Medical Liability Act's ("Act") pre-suit notice and medical authorization requirement aims to encourage private negotiation and settlement of disputes. It does so by assuring health-care providers receive notice of the claim and

the opportunity to investigate, and possibly settle, such claims in advance of the filing and the attendant expense of litigation. *See Carreras v. Marroquin*, 339 S.W.3d 68, 73–74 (Tex. 2011). To that end, a plaintiff must provide notice of the claim at least 60 days prior to suit. TEX. CIV. PRAC. & REM. CODE Ann. § 74.051(a). That much is simple. To obtain the benefit of a corresponding 75-day extension to the applicable statutory period of limitations, however, the notice "must be given as provided" by the Act, *id.* § 74.051(c), and thus "must be accompanied by the authorization form for release of medical records," the form of which is reproduced, with corresponding blanks, in the statute itself. *Carreras*, 339 S.W.3d at 74; CIV. PRAC. & REM. § 74.052. The limitations period set by the legislature is thus determined by the pre-suit communications between the parties.

The narrow procedural question presented here is whether the legislature, in requiring the authorization form to be given as part of the notice, authorized the judiciary to grade the content of the provided form to subsequently determine its validity for purposes of tolling limitations. That is to say, whether, if in the opinion of the judge, a defect existed in the authorization form and, if so, whether it is of such an extent as to retroactively render the notice a nullity for purposes of the Act's limitations provision.[1]

---

[1] The prior panel followed our sister court's holding in *Mitchell v. Methodist Hospital*, 376 S.W.3d 833, 837–38 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

The Act's limitations provision (subparagraph (c)) does not address the content of the authorization form at all, but simply, in conjunction with subparagraph (a), speaks to the *fact* that it be included as part of the notice. *Carreras*, 339 S.W.3d at 74. It also does not suggest any standard for assessing the degree of defect necessary before its effect might be negated. Rather, because errors in the execution of the form are likely to come in many varieties and primarily affect the parties' ability to meaningfully assess the claim and to negotiate a settlement (and not the relevant statutory deadline to file suit), I see no reason to take the legislature's silence for an invitation to create a new motion practice to invalidate the notice.

As detailed below, it is far more likely that the legislative silence in judging the content of the release form was undertaken with knowledge of existing judicial tools favoring settlement and adjudication with "great expedition and dispatch" at the "least expense . . . practicable," any or all of which can be employed to address any defects in the form that might implicate the right to disclosure and repose. TEX. R. CIV. P. 1. Any contrary reading would require us to create our own rules and standards, would inject uncertainty in their application, and would *increase* the costs and delays in the process as the parties battle over the degree of any defects in the trial court and on appeal.

**II.**

While the Act clearly requires the authorization form to accompany the notice, nothing in its text refers to errors or omissions or remotely suggests an invitation for

the court to grade the content of a completed authorization form as exchanged between the parties for the purpose of determining (retroactively and as a matter of unguided discretion) the applicability of the limitations tolling provision.

I see section 74.051 as a purely procedural statute, much like section 18.001 of the civil practice and remedies code, which addresses the parties' exchange of affidavits concerning costs and necessity of services. *See In re Parks*, 603 S.W.3d 454 (Tex. App.—Dallas 2020, orig. proceeding) (Schenck, J., dissenting); *see also* Civ. Prac. & Rem. § 18.001; *In re Allstate Indem. Co.*, 622 S.W.3d 870, 881 (Tex. 2021) (per curiam) (orig. proceeding). Nothing in either statute provides for collateral procedures to render the served communications a nullity. Just as no text in section 18.001 invites courts to strike exchanged affidavits for purposes of their substantive rights to participate at trial, there is no provision in the Act for the striking of an authorization form. To the contrary, the purpose of both statutes (as reflected in their texts) is simply to facilitate an expeditious and efficient resolution of disputes in keeping with existing rules of civil procedure. These concerns are quite distinct from any question surrounding the limitations clock—the principal purpose of which is to afford "consistency" and "predictability" to the calculation of the period, which would be undermined by opening the process to a new, post hoc motions practice.[2] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001). As

---

[2] Reading the Act literally to require notice to "be given as provided in this chapter," one could argue that providing notice in the precise form of the statute—with the blanks *left blank*—would be required.

—4—

the legislature was presumably aware, existing rules are more than adequate to address any concerns that might arise apart from the legislative determination of the period of limitations.

A completed authorization form can create only two kinds of deficiencies: obvious, patent errors immediately obvious to the defendant and latent deficiencies that can only be identified there. Neither relates to the limitations period nor requires a new procedure to be engrafted to the Act.

If the authorization form has obvious facial form deficiencies, the defendant will be immediately aware of the problem and able instantly to seek appropriate relief in the form of (1) required disclosures on any deadline the court deems appropriate;[3] (2) abatement or other order necessary both to obtain the information and permit negotiation without the intervening expense of litigating; (3) imposition

---

Nothing in the text directs whether, much less how, each blank field is to be completed; it is presumably (and fairly) assumed that a good-faith effort to complete each field is expected. It would seem obvious that the plaintiff would not run the risk of deviating from the required form (and thus risk the efficacy of the notice) by adding the required information. What we would do in the case where the plaintiff pursues the other extreme—by simply sending a blank verbatim form or its equivalent—is obviously not the issue here. Instead, we deal here with claimed deficiencies in its substance. Whether such deficiencies are "substantial" or "insubstantial," or made in good or bad faith, may be an important question, but it is not one posed by the Act's calculation of the period of limitations, nor is it posed by this case.

[3] The Act recognizes the prospect of modification or withdrawal of the form by the plaintiff and gives the defendant the automatic right to 60 days' abatement. Trial courts, of course, have the additional authority to manage their dockets and to modify discovery schedules. *See* TEX. R. CIV. P. 1; *id.* 190.5 ("The court may modify a discovery control plan *and must do so when the interests of justice require it*." (emphasis added)); *Bagwell v. Ridge at Alta Vista Invs. I, L.L.C.*, 440 S.W.3d 287, 292 (Tex. App.—Dallas 2014, pet. denied) (trial court has broad discretion to control its docket and promote the efficient administration of justice).

of sanctions[4]; or any combination of the foregoing.  A trial court's failure to afford any such relief in an extreme case such as this would presumably be amenable to mandamus relief.  *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992).

Thus, where any deficiency in the form is patent and extreme, long recognized and adequate judicial remedies are readily available and independent of any interest affected by the period of limitations.  We presume the legislature was aware of these judicial remedies when it omitted any linkage between the content of the form and the limitations period in subparagraph (c).  *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding).

The more serious prospect is of a latent, material omission that is discovered only after the suit is filed.  Say, for example, the plaintiff omits disclosing a treatment relationship with another physician he has already sued and settled with, now claiming injuries inconsistent with the theory advanced in pursuit of the current, threatened (and since filed) litigation.  That is a serious problem to be sure, but one completely unrelated to the period of limitations or the statutory text setting it.  And, once again, the legislature would have known of the caselaw and tools available to redress it.

---

[4] Texas courts have explicit authority to impose sanctions to remediate bad faith discovery practices where a disclosure is mandated in that form, as a court might direct in connection with an order staying proceedings, TEX. R. CIV. P. 215.3, and inherent authority to sanction bad faith conduct interfering with judicial administration. *In re Bennett*, 960 S.W.2d 35 (Tex. 1997) (orig. proceeding); *see also Brewer v. Lennox Hearth Prods.*, 601 S.W.3d 704 (Tex. 2020).  Where a gross deficiency of this sort is noted at the outset, it is unlikely that substantial costs have been incurred.

Say, to continue the example, the omission leads the defendant to make a sizeable settlement it would not have otherwise entered; the remedy is a lawsuit. *See Ford v. Castillo*, 444 S.W.3d 616 (Tex. 2014) (settlement procured by fraud). It is absurd to imagine that the legislature was imagining that the courts would be revising the limitations period as a remedy for the fraud, as the lawsuit that was never filed.

Meanwhile, in cases like this one, where the defect is not immediately obvious and the case is not settled prior to suit, I do not believe the legislature silently expected judges to retroactively set (or reset) the limitations clock as a matter of discretionary judgment to redress the endless varying forms of deficiency. While it may be tempting to import a judicial solution into the statute of limitations, it is not suggested by the text or remotely related to the Act's principal object of promoting settlements and reducing costs. As noted above, courts have the scheduling, sanctions,[5] and mediation tools to redress the problem directly for the disclosure problem it is. Engrafting a new motions practice into the limitations period serves only to complicate the litigation without either promoting settlement or expediting the litigation[6]—thus undermining, rather than enforcing, the purpose of both the Act and the rules.

---

[5] In this setting, the prospect for recovery of attorney's fees and costs is obviously far more serious. *Cf.* TEX. R. CIV. P. 13 (court "shall impose an appropriate sanction" where pleadings are filed in violation of the rule).

[6] In fact, by creating a new floating limitations question ripe for challenge by motion, we would *increase* cost and delay ultimate resolution.

## III.

When, as here, the authorization form presents defects of form or substance, the notice is still "given" within the plain meaning of the Act and the limitations period is fixed. *See Carreras*, 339 S.W.3d at 73–74. I diverge from the majority's opinion because I disagree with the procedure it creates and because, I believe, especially when this Court sits *en banc*, we should limit our discussion to the discrete issue presented. In this case, the majority, in *dicta*, discusses matters exceeding the issue presented. I will not add further delay by directly addressing those discussions but will simply note that under the doctrine of *stare decisis* courts are bound only by the holding and discussion necessary to the resolution of the case. *Newman v. Minyard Food Stores, Inc.*, 601 S.W.2d 754, 756 (Tex. App.—Dallas 1980, writ ref'd n.r.e.).

Accordingly, I respectfully concur in the majority's opinion.

180539co.05

/David J. Schenck//
DAVID J. SCHENCK
JUSTICE

Smith and Evans, J.J., join in this concurring opinion