# Supreme Court of Texas

No. 20-0922

Youval Zive,

*Petitioner,*

v.

Jeffrey R. Sandberg and Palmer & Manuel, P.L.L.C. f/k/a Palmer & Manuel, L.L.P.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 13, 2022**

JUSTICE BUSBY delivered the opinion of the Court.

In *Hughes v. Mahaney & Higgins*, we held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." 821 S.W.2d 154, 157 (Tex. 1991). Thus, if both the malpractice plaintiff and a co-party appeal the judgment on the underlying claim, tolling includes the time that the appeal is pending.

In this case, we must determine whether *Hughes* continues to toll the limitations period when a co-party pursues the appeal in a higher court but the malpractice plaintiff does not participate in that stage of the proceedings. We conclude that the answer is no.

In multi-party cases, *Hughes* tolling includes only "all appeals" in which the malpractice plaintiff participates. This conclusion is consistent not only with *Hughes* and its progeny, but also with our precedent regarding relief for nonappealing parties and our goal of drawing clear lines that make it easier to calculate when the statute of limitations will expire. Under this approach, an appeal in Texas courts is "exhausted" and tolling ends when the court rules on the last action taken by the malpractice plaintiff.

Applying these principles here, we conclude that *Hughes* tolling ended for petitioner's legal malpractice claim on April 1, 2016, when this Court denied his petition for review of the underlying case. Although petitioner's co-party sought further appellate review by filing a petition for writ of certiorari in the Supreme Court of the United States, petitioner did not participate in that proceeding. Because petitioner did not file this suit until October 1, 2018, his claim for legal malpractice is barred by the two-year statute of limitations. We agree with the court of appeals that the malpractice defendant conclusively established the limitations bar, and we therefore affirm.

## BACKGROUND

In 2007, City Bank loaned Grapevine Diamond, LP, over six million dollars. Grapevine Diamond used the funds to purchase ten acres of undeveloped real estate in Grapevine, Texas, from Jonathan

2

Aflatouni. Grapevine Diamond secured the loan by executing a promissory note and first lien deed of trust covering the land. Petitioner Youval Zive, a real estate developer and president of Grapevine Diamond's general partner, also guaranteed the loan personally.[1]

After Grapevine Diamond defaulted and filed for bankruptcy, City Bank initiated a trustee's foreclosure sale of the land. According to Zive, irregularities in the sale resulted in the property being sold for substantially less than the loan balance. To recover the deficiency, City Bank sued Zive and another guarantor, Nasser Shafipour. Shafipour filed third-party claims against Aflatouni and Grapevine Diamond, both of whom asserted cross-claims against City Bank.

In the underlying deficiency litigation, respondents Jeffrey R. Sandberg and Palmer & Manuel, P.L.L.C., (together, Sandberg) represented both Aflatouni and Zive. City Bank moved for summary judgment, and the trial court ordered the parties to participate in mediation. During mediation, City Bank offered to settle for a mutual "walkaway": if Aflatouni and Zive agreed to dismiss their claims against City Bank, City Bank would dismiss its claims against them.

City Bank's settlement attempt failed, but Zive and Sandberg disagree about why that occurred. Although Zive "strongly urged"

---

[1] Grapevine Diamond later borrowed additional funds from City Bank, and the parties executed loan-modification agreements in 2008 and 2009. Zive signed the 2009 loan-modification agreement as guarantor and as president of Grapevine Diamond's general partner. Because neither the 2007 guaranty agreement nor the 2009 loan-modification agreement is part of the summary judgment record, it is unclear what type of guaranty Zive provided. *See Ford v. Darwin*, 767 S.W.2d 851, 854 (Tex. App.—Dallas 1989, writ denied) (distinguishing between guaranty of payment and guaranty of collection).

3

Sandberg to accept the settlement offer, Sandberg allegedly declined to do so on the ground that Aflatouni could obtain a large recovery on his affirmative claims. For his part, Sandberg asserts that he never counseled Zive against accepting the offer. He contends that City Bank offered to settle only if both Aflatouni and Zive agreed to do so, and therefore it was Aflatouni's decision to forgo settling—not Sandberg's failure to accept the settlement offer on Zive's behalf—that doomed the settlement negotiations.

Sandberg withdrew as Zive's counsel, purportedly because "an unresolvable conflict had arisen between Aflatouni and Zive." Subsequent court-ordered mediation efforts were futile. The trial court eventually granted summary judgment for City Bank in the deficiency suit. Zive, Aflatouni, and Grapevine Diamond appealed, and the court of appeals affirmed the trial court's judgment. *See Grapevine Diamond, L.P. v. City Bank*, No. 05-14-00260-CV, 2015 WL 8013401, at *1 (Tex. App.—Dallas Dec. 7, 2015, pet. denied) (mem. op.).

Aflatouni and Grapevine Diamond then filed a petition for review in this Court, and Zive filed his own separate petition. On April 1, 2016, we denied both petitions. Aflatouni and Grapevine Diamond filed a motion for rehearing, but Zive did not take any further action with respect to his petition. We denied rehearing of Aflatouni and Grapevine Diamond's petition for review on May 20, and the court of appeals issued its mandate on May 25, 2016.

A few months later, Aflatouni and Grapevine Diamond filed a petition for a writ of certiorari in the Supreme Court of the United States. Aflatouni and Grapevine Diamond's petition identified Zive as

4

a party to the proceedings below. *See* Petition for Writ of Certiorari at iii, *Grapevine Diamond, L.P. v. City Bank*, 137 S. Ct. 250 (2016) (No. 16-225), 2015 WL 8013401. Zive did not file a document or otherwise attempt to participate in the Supreme Court proceedings. The Supreme Court denied Aflatouni and Grapevine Diamond's certiorari petition on October 3, 2016.

On October 1, 2018, Zive filed this suit against Sandberg for legal malpractice.[2] Sandberg moved for traditional summary judgment, arguing that Zive's malpractice claim accrued on April 1, 2016, the date on which this Court denied his petition for review, and therefore limitations barred his claim. In response, Zive contended that *Hughes* tolled the running of limitations until October 3, 2016, when the U.S. Supreme Court denied Aflatouni and Grapevine Diamond's petition for certiorari. The trial court granted Sandberg's motion for summary judgment and rendered a take-nothing judgment.

The court of appeals affirmed, holding that *Hughes* tolling ended on April 1, 2016, and therefore Sandberg conclusively established that Zive's malpractice claim was barred by limitations. 610 S.W.3d 44, 51 (Tex. App.—Dallas 2020). Zive argued that *Hughes* tolling extended through the denial of the certiorari petition because, had the petition succeeded, it would have set aside the judgment that injured him. The

---

[2] Zive also asserted a claim for breach of fiduciary duty, and the trial court granted Sandberg's motion for summary judgment on that claim. On appeal, Zive did not challenge the judgment with respect to the claim for breach of fiduciary duty, so the court of appeals affirmed that portion of the judgment. *See* 610 S.W.3d 44, 47–48 (Tex. App.—Dallas 2020); *see also Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001) (per curiam).

court disagreed. Noting that *Hughes* focused on the "last action of right" taken by the malpractice plaintiff, the court concluded that *Hughes* tolling applies only to an appeal of "the underlying claim *asserted by or against the legal malpractice plaintiff*." *Id.* at 49 (citing *Hughes*, 821 S.W.2d at 158 n.6).

Justice Schenck dissented. *Id.* at 51. Citing the need for a bright-line rule, he argued that *Hughes* tolling should end "when no party to the litigation is able to seek further, direct appellate relief." *Id.* (Schenck, J., dissenting from denial of en banc consideration); *see also id.* at 53 ("[F]inality, as that term is commonly understood, includes the period during which the judgment is still open to direct review, whether that available avenue for relief is invoked or not."). Under Justice Schenck's approach, *Hughes* tolling would encompass "continuing (but unutilized) available remedies, . . . includ[ing] the period for seeking rehearing and certiorari." *Id.* at 54.

Regarding multi-party cases, Justice Schenck contended that appeals of the underlying claim are not "exhausted" until (1) "there has . . . been a clear and irrevocable declaration that the absent party could not benefit from the result of further proceedings and the litigation . . . has not 'otherwise finally concluded,'" or (2) "the proceeding comes to final rest with relief on direct review no longer available as to any of the parties to [the] last judgment." *Id.* at 55. The court's approach, according to Justice Schenck, "undermine[d] the seeming clarity of the start date specified by *Hughes* and its progeny." *Id.*

Zive filed a petition for review, which we granted.

## ANALYSIS

## I.     Standard of review

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). Where, as here, a defendant moves for traditional summary judgment, it must demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c). "[T]o obtain traditional summary judgment on a limitations defense, the defendant must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2004)).

As we recently explained in *Draughon*, a limitations dispute may require a court to decide "which days count toward the running of limitations," or whether equitable defenses allow the suit to proceed even though the limitations period has run. *Id.* at 88–89. *Hughes* tolling belongs to the former category. *Id.* at 90. Thus, when the plaintiff contends that *Hughes* tolling applies, the burden is on the defendant to conclusively negate *Hughes*'s applicability. *Id.*; *Erikson*, 590 S.W.3d at 563. Only after the defendant does so is the plaintiff required to produce evidence raising a fact issue. *Draughon*, 631 S.W.3d at 96.

## II. *Hughes* tolling extends only through appellate proceedings in which the malpractice plaintiff participates.

Claims for legal malpractice are subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Erikson*, 590 S.W.3d at 563. Generally, "[a] cause of action for legal malpractice accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action." *Hughes*, 821 S.W.2d at 156.

But in *Hughes*, we held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157. Unlike the legal-injury rule and discovery rule, which affect when a claim accrues, *Hughes* tolling is an equitable doctrine that tolls the running of limitations from the date of accrual through the date all appeals are exhausted. *See id.* at 156–57.

*Hughes* recognized an "untenab[le] . . . conflict" in cases where "an attorney commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation." *Id.* at 156. In such cases, the period during which the plaintiff must file his malpractice suit often overlaps with his appeals in the underlying litigation affected by the alleged malpractice. *See id.* at 157. To prevail in both proceedings, the malpractice plaintiff must simultaneously assail and defend his attorney's actions in the underlying case. *Id.* This

8

compulsory contradiction is the first of two policy concerns underlying the *Hughes* tolling rule. *Id.*

*Hughes*'s second policy rationale for tolling is that the viability of the malpractice claim depends on the outcome of the underlying case.[3] *Id.* Because a claim for legal malpractice is one for negligence, the malpractice plaintiff must establish the traditional elements of duty, breach, causation, and damages. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995). Without *Hughes*, a situation could arise in which a party injured by a judgment in Case 1 appeals that judgment and also timely files Case 2 alleging malpractice by his attorney. At the time Case 2 is filed, the malpractice plaintiff can point to the judgment in Case 1 to show damages from the alleged malpractice. *Cf. Pace Corp. v. Jackson*, 284 S.W.2d 340, 348 (Tex. 1955) (noting that uncertainty as to amount of damages, unlike uncertainty as to existence of damages, is not fatal to recovery).

While appeals in Case 1 are ongoing, the malpractice plaintiff could win Case 2 and obtain a judgment against his former attorney. But if the plaintiff subsequently succeeded in his appellate efforts to

---

[3] Although we have discussed the "inconsistent positions" rationale for *Hughes* tolling over the years, we have had little occasion to comment further on this "viability" rationale. Some courts of appeals have concluded that *Hughes* tolls the limitations period while the underlying proceedings are pending because "the pursuit of the second suit prior to [the underlying case's] outcome would either be improper or result in judicial complications." *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 167 (Tex. App.—Amarillo 1996, writ denied). In this same vein, courts have suggested that the underlying action constitutes a "legal impediment" to the malpractice suit. *See El Pistolon II, Ltd. v. Levinson Alcoser Assocs., L.P.*, 627 S.W.3d 494, 499–500 (Tex. App.—Corpus Christi–Edinburg 2021, pet. filed) (collecting cases).

overturn the judgment in Case 1, his injury from the malpractice would be reduced or even disappear.[4] Thus, having succeeded in both Case 1 and Case 2, the malpractice plaintiff would receive a windfall. This windfall—along with any subsequent litigation aimed at upholding or overturning it—is easily avoided by tolling the statute of limitations so that the malpractice plaintiff can file his suit after Case 1 is "finally concluded."

In *Hughes*, tolling ended when this Court overruled the malpractice plaintiffs' motion for rehearing on the appeal of the underlying claim because it was a court's ruling on "the last action of right" that the plaintiffs "could take and did take" with respect to the underlying suit. *See Hughes*, 821 S.W.2d at 158 n.6. We have since clarified that *Hughes* tolling applies "until all appeals on the underlying claim are exhausted or the litigation is *otherwise finally concluded*." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001) (emphasis added); *see id.* at 123 (holding underlying litigation "was not finally concluded until . . . the court of appeals issued its order dismissing [the] appeal" due to settlement). And for malpractice claims arising out of criminal representation, we have held that *Hughes* tolling encompasses not only direct appeals but also post-conviction proceedings. *Gray v. Skelton*, 595 S.W.3d 633, 640 (Tex. 2020).

Relying on *Apex Towing* and *Gray*, Zive argues that "all appeals" include those of co-parties, even when the malpractice plaintiff does not

---

[4] *See Laird v. Blacker*, 828 P.2d 691, 704 (Cal. 1992) (Mosk, J., dissenting) ("The status of the malpractice claim is uncertain until the appeal in the underlying case is resolved, because if it is ultimately decided in the client's favor the malpractice suit may well become moot for lack of damages.").

participate in them.  Neither *Hughes* nor our post-*Hughes* cases address whether *Hughes* tolling applies when the malpractice plaintiff does not participate in a co-party's appeal of the underlying case.

"[I]n the area of limitations, bright-line[] rules generally represent the better approach." *Apex Towing*, 41 S.W.3d at 122.  Indeed, we have advised courts to apply the *Hughes* tolling rule categorically. *Id.*  Because *Hughes* tolling is applied in a "clear and strict" manner, *see id.*, we strive for clarity as we interpret its scope.  Although we do not "parse the language in our opinions like the words in a statute," *Hughes*'s language still informs our analysis.  *Erikson*, 590 S.W.3d at 566.

Our focus in *Hughes* was the court's ruling on the "last action of right" taken by the malpractice plaintiff.  *See* 821 S.W.2d at 158 n.6. This approach suggests that in multi-party cases such as this one, the focus should be on the court's ruling on the last action taken by the malpractice plaintiff rather than the last action taken by a co-party. Accordingly, for *Hughes* tolling to encompass the entire time that appellate proceedings initiated by a co-party are pending, the malpractice plaintiff must continue to participate in those proceedings. We adopt this rule for three reasons.

First, this rule provides a forward-looking bright line that makes it easy for parties and counsel to calculate the deadline for filing a malpractice suit.  Likewise, the rule makes it easy for adverse parties and courts to determine whether such a suit is barred by limitations. *See Apex Towing*, 41 S.W.3d at 122.  Although we acknowledge that Zive's proposed rule—applying *Hughes* to any party's appeal of the

11

underlying litigation—is also a bright-line rule, it would broaden the *Hughes* tolling rule significantly. *Hughes* tolling only extends through the exhaustion of "all appeals on the underlying *claim*" allegedly affected by malpractice—that is, all appeals involving a cause of action by or against the malpractice plaintiff, not every appeal addressing any claim in the case.[5] 821 S.W.2d at 157 (emphasis added). We previously declined to broaden the *Hughes* exception to limitations, *see Murphy v. Campbell*, 964 S.W.2d 265, 272 (Tex. 1997), and we decline to do so again today.

Second, this rule does not impose a significant burden on the malpractice plaintiff, who may continue to participate in any appellate proceedings simply by filing a short document joining or adopting his co-party's positions. Our procedural rules allow "[a]ny party" to "join in or adopt by reference all or any part of a brief, petition, response, motion, or other document filed in an appellate court by another party in the same case." TEX. R. APP. P. 9.7. Similarly, a party to the underlying appellate proceedings can qualify for relief in the U.S. Supreme Court by filing a document. *See* SUP. CT. R. 12.6.[6]

---

[5] *Hughes* tolling also encompasses an appellate proceeding initiated by an adverse party that challenges a trial or appellate judgment in favor of the malpractice plaintiff. *Cf. Hughes*, 821 S.W.2d at 156, 158 (tolling limitations through adverse party's successful appeal of trial court's judgment favoring malpractice plaintiffs and this Court's denial of malpractice plaintiffs' application for writ of error). But in multi-party cases, *Hughes* tolling does not apply to an appeal by or against a co-party in which the malpractice plaintiff does not participate.

[6] As a party in the Texas appellate proceedings on the underlying claim, Zive was considered a respondent in the U.S. Supreme Court proceedings initiated by Aflatouni and Grapevine Diamond's petition for certiorari. *See*

12

Third, the rule requiring the malpractice plaintiff's participation in an appeal to continue tolling is consistent with the principle that a reversal on appeal as to one party generally does not warrant a reversal as to nonappealing parties. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex. 1989). When the malpractice plaintiff fails to participate in an appeal of the underlying case, *Hughes* does not toll limitations during a co-party's appeal because the outcome generally will not change with respect to the nonappealing malpractice plaintiff.

As Zive points out, there are cases in which "the rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Id.* And in these cases, a reversal as to an appealing co-party may extend to nonappealing parties. *See, e.g.*, *Ex parte Elliot*, 815 S.W.2d 251, 251–52 (Tex. 1991) (per curiam) (applying *Plas-Tex* exception to expunction case in which only one agency appealed); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982) (reversing judgment and remanding entire case where claims turned on same jury finding because "the result of the second trial could be inconsistent with the result of the first trial").

Citing *Plas-Tex*, Zive proposes yet another alternative rule: *Hughes* tolling should encompass a co-party's appeal when the

---

SUP. CT. R. 12.6. But Zive did not file anything in the U.S. Supreme Court within the response time specified in the applicable rule, so he did not qualify to receive any relief that the parties to that petition could have received. *See id.*; *cf. United States v. Padilla*, 508 U.S. 77, 79 n.1 (1993) (applying Rule 12.6's predecessor to conclude that although respondents' co-conspirator was technically a respondent, court would not address portion of case affecting him because he did not "file a petition challenging that decision").

13

appealing and nonappealing parties' rights are "interwoven." He argues that if Aflatouni and Grapevine Diamond had succeeded in the U.S. Supreme Court, the foreclosure sale upon which the deficiency judgment against Zive was based would have been set aside. Thus, he contends that *Hughes* tolling continued while Aflatouni and Grapevine Diamond's certiorari petition was pending.

We acknowledge that the rule adopted today could result in a scenario in which the malpractice plaintiff succeeds on his or her claim, but a co-party's appeal of the underlying case later reduces or eliminates the damages caused by the malpractice. Yet incorporating the fact-specific *Plas-Tex* exception into the *Hughes* analysis would overcomplicate what should be a "clear and strict" and "categorical" rule. *Erikson*, 590 S.W.3d at 559.

There also seems little need to complicate *Hughes* tolling to accommodate the *Plas-Tex* exception, as Texas appellate courts do not apply that exception frequently.[7] In addition, the trial court handling the malpractice claim could address the windfall risk in cases where the *Plas-Tex* exception applies by staying or abating the malpractice case until the co-party's appeals are exhausted or the litigation is otherwise finally concluded. *See Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981) ("A court, in exercise of its sound discretion,

---

[7] In the past ten years, for instance, courts of appeals have found the *Plas-Tex* exception applicable only three times. *See Zaidi v. Shah*, 502 S.W.3d 434, 447 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Smith v. Philley*, No. 02-12-00478-CV, 2014 WL 345631, at *2 (Tex. App.—Fort Worth Jan. 30, 2014, no pet.) (mem. op.); *U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 220 (Tex. App.—San Antonio 2012, pet. denied).

may abate an action for reasons of comity, convenience and orderly procedure . . . ." (quoting *Timon v. Dolan*, 244 S.W.2d 985, 987 (Tex. App.—San Antonio 1951, no writ))).

III.  **Because *Hughes* tolling ended when this Court denied Zive's petition for review, limitations bars Zive's malpractice claim.**

Applying *Hughes* here, tolling for Zive's malpractice claim ended on April 1, 2016, when this Court denied Zive's petition for review. Aflatouni and Grapevine Diamond filed a motion for rehearing in this Court, but Zive did not.  Aflatouni and Grapevine Diamond then filed a petition for writ of certiorari, but Zive did not participate in the U.S. Supreme Court proceedings.

Because Zive did not file his malpractice suit until October 1, 2018, Sandberg has conclusively shown that this suit is barred by the two-year statute of limitations.  Thus, the trial court properly granted Sandberg's motion for summary judgment, and the court of appeals correctly affirmed that judgment.

Despite refining *Hughes* over the years, we have not had occasion to provide much guidance on how to determine the terminal point of the underlying litigation—that is, when all appeals are "exhausted" or the litigation is "otherwise finally concluded." *See, e.g.*, *Gray*, 595 S.W.3d at 640 (tolling until date Court of Criminal Appeals issued mandate denying review in underlying case and from date habeas application was filed until charges were dismissed); *Apex Towing*, 41 S.W.3d at 123 (tolling until date court of appeals dismissed appeal of underlying case); *Hughes*, 821 S.W.2d at 158 (tolling until date this Court denied rehearing in appeal of underlying case, which was sufficient to render

15

suit timely without addressing continuing availability of review). We take the opportunity to do so here as guidance for future cases. *Cf. Goode v. Shoukfeh*, 943 S.W.2d 441, 449 (Tex. 1997).

For an appeal in Texas courts, we conclude it is most appropriate for *Hughes* tolling to end when the court in which the case is pending rules on the last action taken by the malpractice plaintiff. Applying this rule here, tolling ended when this Court denied Zive's petition for review, as that was the ruling on the last action taken by Zive.[8] Not only is this rule consistent with *Hughes*, where we focused on the date on which the "last action of right" taken by the malpractice plaintiffs was "concluded" by a court ruling, 821 S.W.2d at 158 n.6, it also advances our efforts to maintain "predictability and consistency" in our limitations jurisprudence. *See Erikson*, 590 S.W.3d at 566 (quoting *Apex Towing*, 41 S.W.3d at 122).

We acknowledge that there are other potential terminal points for the litigation that could be selected, such as the date of the mandate's issuance or the expiration of the deadline to file a notice of appeal or to

---

[8] This rule can be applied in any court that finally resolves a claim by or against the malpractice plaintiff. For example, if Zive had filed a motion for new trial challenging the trial court's judgment in the underlying litigation but had not filed a notice of appeal, *Hughes* tolling would have ended when the trial court denied the motion (either expressly or by operation of law). If Zive had filed a motion for rehearing in this Court, tolling would have ended when we denied rehearing or, if we granted rehearing and granted the petition, when we issued a judgment. And if, as part of that judgment, we chose to remand the case, then tolling would have ended when the claim was resolved on remand. Similarly, had Zive filed a certiorari petition or other document in the U.S. Supreme Court, *Hughes* tolling would have ended when certiorari was denied or, if the Supreme Court granted certiorari and ordered a remand, when the claim was finally resolved on remand.

initiate appellate proceedings in a higher court.[9]  But these approaches would complicate the process of determining when *Hughes* tolling ends, thereby undermining our goal of ensuring predictability.  *See id.*  Tying the end of *Hughes* tolling to the expiration of time to file a notice of appeal or petition for review, for example, would require courts and litigants to pinpoint a date when an action did *not* occur by considering (among other things) the type of judgment appealed, the court to which that judgment was appealed, and whether an applicable rule extended the deadline.  *See, e.g.*, TEX. R. APP. P. 26.1–26.3, 53.7.[10]  Using the date of the mandate's issuance might appear simpler by comparison, but it would similarly require courts and litigants to focus on a seemingly arbitrary point subject to fluctuation.  *See* TEX. R. APP. P. 18.2, 18.7.[11]  Such complicated analyses are inappropriate in the context of *Hughes* tolling.  Just as the analysis of whether *Hughes* tolling applies to a co-party's appeal focuses on the malpractice plaintiff's participation in that

---

[9] *E.g.*, *Thomas v. Hillyard*, 445 P.3d 521, 527 (Utah 2019) (tolling limitations until "expiration of the time to file an appeal" or, if appeal was filed, date of appeal's resolution); *Branch Banking & Tr. Co. v. Gerrard*, 432 P.3d 736, 739 (Nev. 2018) (using date Nevada Supreme Court issued remittitur in underlying case).

[10] We also recognize that our rule does not continue tolling during the period in which the judgment is open to review that the malpractice plaintiff ultimately decides not to pursue, and thus (for example) would not include a granted extension of time to file a notice of appeal or petition for review that the plaintiff later decides not to file.  Such periods are typically brief, and the malpractice plaintiff has two years from the date *Hughes* tolling ends to decide whether to file his or her malpractice suit.

[11] In addition, if a co-party files a petition for review in this Court but the malpractice plaintiff does not, the mandate may not issue until long after appellate proceedings on the claim by or against the malpractice plaintiff were finally concluded in the court of appeals.  *See* TEX. R. APP. P. 18.1.

17

appeal, the determination of when litigation is "finally concluded" hinges on the relevant court's resolution of the malpractice plaintiff's last action on the underlying claim. Thus, the date *Hughes* tolling ends is the date on which the court where the underlying claim is pending rules on the malpractice plaintiff's last action regarding that claim.

## CONCLUSION

In *Hughes*, we held that the statute of limitations for a malpractice claim is "tolled until all appeals on the underlying claim are exhausted." 821 S.W.2d at 157. We conclude *Hughes* tolling applies only to all appeals in which the malpractice plaintiff participates. Here, *Hughes* tolling for Zive's legal-malpractice claim ended on April 1, 2016, so Zive's malpractice suit—filed over two years later—is barred by limitations. We agree with the court of appeals that Sandberg conclusively established that limitations bars Zive's malpractice claim, and we therefore affirm the court of appeals' judgment.

J. Brett Busby
Justice

**OPINION DELIVERED:** April 22, 2022

18